UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

Civil Action No. 1:21-cv-11901-WGY

| | |
|---|---|
| JUDITH PRINZO, on behalf of herself and all other employees similarly situated, | ) ) |
| | ) |
| Plaintiff | ) |
| | ) |
| v. | ) |
| | ) |
| HANNAFORD BROS. CO., LLC, | ) |
| | ) |
| Defendant. | ) |

## PLAINTIFF'S MOTION TO REMAND

Plaintiff Judith Prinzo moves pursuant to 29 U.S.C. § 1447 to remand this case because

Defendant Hannaford Brothers has not and cannot carry its burden to show that this case satisfies

the amount-in-controversy requirements necessary for federal jurisdiction. Hannaford removed

this case from the Superior Court of the Commonwealth of Massachusetts, Plymouth County,

citing 28 U.S.C. §§ 1332(a) and 1332(d). To maintain removal under these subsections,

Hannaford must show a reasonable probability that the amount in controversy exceeds $75,000

(as to Ms. Prinzo) or $5,000,000 (as to the putative class), respectively. *See Dart Cherokee Basin

Operating Co., LLC v. Owens*, 574 U.S. 81, 88 (2014), *citing* 28 U.S.C. § 1446(c)(2)(B).

Because Hannaford cannot do so, this Court should remand.

### Background

Hannaford owns and operates numerous supermarkets throughout Massachusetts.

(Complaint ¶ 1). Ms. Prinzo was a loyal employee, working as a Department Manager at

Hannaford's Middleboro, Massachusetts store for over a decade. (*Id.* ¶ 5). She regularly worked

over 40 hours per week. (*Id.* ¶ 6). She also worked Sundays and holidays, year after year. (*Id.*

¶¶ 7-8) Hannaford did not pay her for her overtime, holiday, or Sunday hours as Massachusetts law requires, however. She sued. She filed in Commonwealth court to enforce Commonwealth law, on behalf of a putative class of Commonwealth residents. The Complaint asserts three counts under Massachusetts law, alleging unlawful failure to pay overtime as required by G.L. c. 151, § 15, premium wages for work performed on Sundays, G.L. c. 136, § 6, and premium wages for work on covered holidays, G.L. c. 136, § 13. (Complaint ¶¶ 38-57). Ms. Prinzo seeks lost wages, statutory trebling, interest, and attorneys' fees and costs. (*Id.* at 9). The Complaint lists no specific damages amount, either for Ms. Prinzo or for the putative class.

Hannaford previously removed to this court, on June 9, 2021, filing a Notice of Removal that alleged few facts and offered no evidence. (Notice of Removal, ECF No. 1, Civil Action No. 1:21-cv-10968-WGY). On Ms. Prinzo's motion to remand, and following a hearing, the Court remanded the case to the Superior Court. (Order of Remand, ECF No. 32, Civil Action No. 1:21-cv-10968-WGY).

Ms. Prinzo was deposed on October 26, 2021. During her deposition, she estimated – without the benefit of any records of her actual working hours – that she typically worked 10-12 hours per day, but that time included a 30-minute meal break. (Prinzo Depo., Ex. 1, at 105:6-13). On average, therefore, she had compensable work time of approximately 10.5 hours during the days she worked, according to her memory.

Although her payroll records do not reflect her actual working hours, they do reflect when she took paid holidays, vacation, or sick time. (Weekly Wage History Report, Ex. 2). From 4/28/2018 to 12/31/2018, she took one or more paid days off (for a holiday, vacation, or sick leave) during 7 payroll weeks (weeks 19, 23, 26, 36, 38, 47, and 52). In 2019, she took one or

more paid days off during 8 payroll weeks (weeks 1, 18, 19, 20, 29, 45, 46, and 52). And in 2020, she took one or more paid days off during 5 payroll weeks (weeks 1, 11, 19, 29, and 41).

Ms. Prinzo's annual salary was $56,556.33 for the period of April 28, 2018 through April 20, 2019; $58,535.80 for the period of April 21, 2019 through April 18, 2020; and $60,584.55 for the period of April 19, 2020 through January 29, 2021. (Declaration of Sean O'Connor, ECF No. 27-1, Civil Action No. 1:21-cv-10968-WGY).

Based on this data, Ms. Prinzo's estimated single damages are $16,591.45, or $49,774.36, when trebled, as set forth below:

| | 4/28/18-4/20/19 | 4/21/19-4/18/20 | 4/19/20-1/29/21 |
|---|---|---|---|
| **Salary** | $ 56,556.33 | $ 58,535.80 | $ 60,584.55 |
| **Gross Weeks** | 52 | 52 | 40 |
| **Weeks With Overtime\*** | 44 | 43 | 37 |
| | | | |
| **Average Weekly Hours** | 52.5 | 52.5 | 52.5 |
| **Regular Rate\*\*** | $ 20.72 | $ 21.44 | $ 22.19 |
| **Unpaid Overtime Rate** | $ 10.36 | $ 10.72 | $ 11.10 |
| | | | |
| **Damages** | $ 5,697.07 | $ 5,762.45 | $ 5,131.93 |
| | | | |
| **TOTAL DAMAGES** | **Single** | **Treble** | |
| | $ 16,591.45 | $ 49,774.36 | |
| | | | |
| Notes: | | | |
| \* Gross weeks – weeks with one or more holiday or vacation days | | | |
| \*\* Per 454 CMR 20.02: Weekly pay divided by hours worked | | | |

## Legal Standards

Hannaford justified its removal to this Court based on two subsections of 28 U.S.C. § 1332, subsection (a), which grants district courts original jurisdiction of civil actions "where the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs,

and is between . . . citizens of different States," and subsection (d), as amended by the Class

Action Fairness Act of 2005 ("CAFA"), which grants jurisdiction in certain class actions where,

among other requirements, the "matter in controversy exceeds the sum or value of $5,000,000,

exclusive of interest and costs." Because Hannaford has not demonstrated that the amount in

controversy requirement has been satisfied under either section, the Court should remand the

case.[1]

  As the party invoking this Court's jurisdiction, Hannaford bears the burden of proof.

*Pantano v. Ocwen Loan Servicing, LLC*, 2019 WL 7039629, *1 (D.Mass. Dec. 20, 2019)

("When a plaintiff files an action in state court and the defendant responds by invoking federal

jurisdiction through removal, the defendant has the burden of establishing that removal to the

district court is proper."), *citing Danca v. Private Health Care System, Inc*., 185 F.3d 1, 4 (1st

Cir. 1999). When considering whether a defendant has met its burden, "'the court decides, by a

preponderance of the evidence, whether the amount-in-controversy requirement has been

satisfied.'" *Waithaka v. Amazon.com, Inc.*, 2018 WL 4092074, at *1 (D.Mass. Aug. 28, 2018),

*quoting Dart Cherokee*, 574 U.S. at 88. *See also Arrigo v. Scholarship Storage, Inc*., 2011 WL

3584715, *4 (D.Mass. Aug. 10, 2011) ("'the party invoking diversity jurisdiction must prove

domicile by a *preponderance of the evidence*'") (emphasis in original)*, quoting Garcia Perez v.

Santaella,* 364 F.3d 348, 350 (1st Cir. 2004). Evaluating the propriety of removal, however, does

not warrant burdensome proceedings, for "[t]he First Circuit has found that a determination of

removal should be done 'quickly, without an extensive fact-finding inquiry.'" *Waithaka,* 2018

WL 4092074, at *2, *quoting Spielman v. Genzyme Corp.*, 251 F.3d 1, 4-5 (1st Cir. 2001).

---

[1] Plaintiff does not dispute that the parties are of diverse citizenship and does not dispute that there is a reasonable probability the putative class contains over 100 persons.

When a party seeks removal under the traditional $75,000 amount-in-controversy standard, courts apply a presumption against removal and resolve doubts in favor of state court jurisdiction, though CAFA eliminated the presumption for removal of class actions using the $5,000,000 standard. *Massachusetts v. Exxon Mobil Corp.*, 462 F. Supp. 3d 31, 38-39 (D. Mass. 2020), *citing Dart Cherokee*, 574 U.S. 81; *see also id.* at 38 ("Removal statutes generally 'are to be strictly construed,' and 'any ambiguity as to the source of law . . . ought to be resolved against removal.'"), *quoting Rossello-Gonzalez v. Calderon-Serra*, 398 F.3d 1, 11 (1st Cir. 2004).

1.   **This Court does not have jurisdiction under section 1332(a), because Hannaford cannot show by a preponderance of the evidence that the amount in controversy exceeds $75,000.**

Under section 1332(a), Hannaford may not aggregate the potential recoveries of Ms. Prinzo and other members of the class, either with respect to damages *or* attorneys' fees. *Arrigo*, 2011 WL at *4, *citing Snyder v. Harris*, 394 U.S. 332, 335 (1969) *and Spielman v. Genzyme Corp.*, 251 F.3d 1, 8 (1st Cir. 2001) (other citations omitted). *See also Pantano*, 2019 WL 7039629, *3 ("For the purposes of determining the amount in controversy, 'attorney's fees in a class action may not be aggregated and attributed only to the named plaintiff but rather must be prorated across the entire class.'") (citation omitted). As a result, Hannaford must prove, by a preponderance of the evidence, that Ms. Prinzo will recover at least $75,000 when her individual damages are combined with her *pro rata* share of attorneys' fees.

It is improper to consider future fees. Other courts in this jurisdiction have held that "[f]ees that have not yet been incurred cannot be said to be in controversy at the time of removal." *Barbuto v. Advantage Sales & Marketing, LLC*, 148 F. Supp. 3d 145, 148 (D.Mass. 2015). That is consistent with the First Circuit's direction that courts must determine the amount

in controversy "'*at the time of removal.*'" *Id.*, *quoting Amoche v. Guarantee Trust Life Ins. Co.*,

556 F.3d 41, 51 (1st Cir. 2009) (emphasis in original). As the district court explained in *Barbuto*:

> Excluding fees that have not yet been incurred is also consistent with the overall statutory
> scheme, which excludes 'costs' from the amount of controversy, an exclusion justified by
> legal scholars as 'an inappropriate element for inclusion in determining whether the
> jurisdictional amount requirement has been satisfied since that must be ascertained at the
> beginning of the case.'

*Id.* at 148-49, *quoting* § 3712 Interest and Costs, 14AA Fed. Prac. & Proc. Juris. § 3712 (4th ed.).

Hannaford cannot, therefore, rely on projections of what the attorneys' fees might amount to at

the end of this case. If it could, "all state law claims of first impression between citizens of

diverse states could be brought to federal court," given that attorney's fees frequently "depend

more on the vigorousness of Defendants' litigation posture than any other factor." *Id.* at 149.

Even if future fees could be considered, it does not matter here. As noted above, Ms.

Prinzo's estimated damages, after trebling, are about $50,000, which is around $25,000 short of

the jurisdictional threshold. According to Hannaford, there are at least 145 individuals in the

proposed class. (Declaration of Sean O'Connor, ECF No. 27-1, Civil Action No. 1:21-cv-10968-

WGY). For Ms. Prinzo's pro rata share of attorneys' fees to equal $25,000, therefore, the total

amount of fees would have to be over $3,625,000. Even at an average rate of $600 per hour (the

rate at which this Court last awarded fees to the most senior of Ms. Prinzo's counsel),[2] it would

require over 6,000 hours of legal work (the equivalent of about 120 50-hour work weeks) to

reach $3,625,000 in fees. Plainly, that has not happened, and it is not going to happen in this

case. As a result, Hannaford has not proven, and cannot prove, that the jurisdictional threshold is

satisfied in this case.

---

[2] *See* Memorandum & Order, ECF No. 322, Civil Action No. 1:12-cv-10291-WGY, at 14.

**2.   This Court does not have jurisdiction under section 1332(d), because Hannaford cannot show by a preponderance of the evidence that the amount in controversy for the class exceeds $5,000,000.**

When opposing Ms. Prinzo's prior motion to remand, Hannaford contended that class damages could be estimated by multiplying her damages by the number of people in the class. (Defendant's Opposition to Plaintiff's Motion to Remand, ECF No. 27, Civil Action No. 1:21-cv-10968, at 15-16). That method is demonstrably unreasonable here, for at least five reasons.

First, it would be improper to use the figure of 145 class members, because that number reflects a significant amount of turnover, meaning that many of those class members worked for far shorter periods than Ms. Prinzo and have damages far lower than hers. According to Hannaford, there are only about 86 individuals working as department managers in Massachusetts at any given time. (Declaration of Sean O'Connor, ECF No. 27-1, Civil Action No. 1:21-cv-10968-WGY).

Second, Ms. Prinzo took sick leave only once during the three years preceding her filing of this case, thereby increasing the number of her overtime hours. (Weekly Wage History Report, Ex. 2). That is an unusually low usage of sick time. Based on information from the Massachusetts Attorney General's Office and the Centers for Disease Control, employees use an average of 3.7 sick days per year. (Massachusetts Attorney General, *Protecting Massachusetts Workers: Attorney General Maura Healey's 2018 Labor Day Report*, at 3 (Sep. 3, 2018), attached as Ex. 3). Unlike Ms. Prinzo, Hannaford has access to the actual sick time usage of its employees. It is worth noting that the period at issue in this case includes the entire duration of the Covid-19 pandemic, which likely increased the average amount of sick time usage.

Third, as with sick leave, Ms. Prinzo rarely took paid holidays, opting instead to cash out her unused holidays. (Weekly Wage History Report, Ex. 2). Had she taken paid holidays, her

damages would have been significantly lower, because there would have been more weeks when she worked fewer or no overtime hours. It is unreasonable blindly to assume that all members of the class took paid holidays as infrequently as Ms. Prinzo, particularly where Hannaford has access to records showing exactly how many paid holidays were taken.

Fourth, department managers regularly were scheduled to work 45 hours per week – and thus all are likely to have worked overtime hours – but there is no evidence that they worked as many hours over 45 as Ms. Prinzo did. Hannaford has refused to produce class contact information to Ms. Prinzo, which has precluded her from contacting other department managers to obtain information about their actual hours worked.

And, fifth, Hannaford's department managers had different salaries, with many likely to have salaries lower than Ms. Prinzo given her lengthy tenure.  As such, it is unwarranted for Hannaford to assume that they all had the same salary as Ms. Prinzo, especially when Hannaford has access to actual salary information.[3]

Even if Ms. Prinzo's damages were blindly multiplied by the number of department manager positions in Massachusetts, the result is only about $4,280,595 ($49,774.36 times 86). As noted above, the amount of fees for purposes of this jurisdictional analysis should be determined as of the time of removal. Plainly, the fees for Ms. Prinzo's counsel come nowhere near $720,000 as of the date of removal. And even if the Court were to include total *expected* fees, Hannaford cannot prove by a preponderance of the evidence that fees will exceed $720,000,

---

[3] That the amount of Ms. Prinzo's overtime hours might be greater than others in the class has no bearing on class certification, because it is well established that "[w]here…common questions predominate regarding liability, then courts generally find the predominance requirement to be satisfied even if individual damages issues remain." *Smilow v. Southwestern Bell Mobile Systems, Inc*., 323 F.3d 32, 40 (1st Cir. 2003).

or anything close to that amount. After all, given the number of variables that could affect that number, any estimate as high as $720,000 will require a fatal dose of speculation. Among other things, the Massachusetts wage laws entitle prevailing plaintiffs to an award of "such reasonable attorney's fees *as may be allowed by the court*." G.L. c. 151, § 1B (emphasis added). Courts, including this one, regularly reduce requested fees amounts based on a determination that any billed time is "excessive, redundant, or otherwise unnecessary." *Hensley v. Eckerhart*, 461 U.S. 424, 434 (1983). What amount of fees ultimately will be claimed, and the extent to which those fees will be reduced, are facts that cannot reasonably be determined at this early date.

### Conclusion

For the foregoing reasons, Ms. Prinzo respectfully requests that the Court remand this case to the Superior Court Department for the Commonwealth of Massachusetts.

Respectfully submitted,

JUDITH PRINZO, on behalf of herself and all other employees similarly situated,

/s/ *Stephen S. Churchill*
Stephen Churchill, BBO #564158
FAIR WORK, P.C.
192 South Street, Suite 450
Boston, MA 02111
Tel.    (617) 607-3260
Fax.    (617) 488-2261
steve@fairworklaw.com

Benjamin Knox Steffans, BBO #568535
Steffans Legal PLLC
7 North Street, Suite 307
Pittsfield, MA 01201
(413) 418-4176
bsteffans@steffanslegal.com

Dated: December 20, 2021

## **CERTIFICATE OF SERVICE**

I certify that on this date I served a copy of the foregoing document, through the ECF system, on counsel for the Defendant.

Dated: December 20, 2021                    /s/ *Stephen Churchill*
                                            Stephen Churchill