## COMMONWEALTH OF MASSACHUSETTS

PLYMOUTH, ss.                              SUPERIOR COURT

| | |
|---|---|
| JUDITH PRINZO, on behalf of herself and all other employees similarly situated, ) ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Civil Action No.  2183CV00323 |
| ) | |
| HANNAFORD BROS. CO., LLC, ) | |
| ) | |
| Defendant. ) | |
| ) | |

### DEFENDANT'S RESPONSES AND OBJECTIONS TO PLAINTIFF'S FIRST SET OF INTERROGATORIES[1]

Pursuant to Mass. R. Civ. P. 26 and 33, Defendant Hannaford Bros. Co., LLC ("Defendant") hereby responds to the Interrogatories served by the Plaintiff Judith Prinzo ("Plaintiff").

Defendant hereby expressly reserves all evidentiary objections and expressly disclaims any intent to accept or admit the relevance of the matters inquired into or the information provided in response to these Interrogatories.  The objections and responses made to these Interrogatories are based on the best information available to Defendant at this time, and Defendant reserves the right to amend or supplement its objections and responses should any additional and/or different information become available.

---

[1] Plaintiff originally filed this Action in the Massachusetts Superior Court for Plymouth County, Massachusetts.  Defendant subsequently removed this Action to the United States District Court for the District of Massachusetts, and Plaintiff's Interrogatories were served while this Action was pending before the federal district court.  Because this Action has since been remanded back to Superior Court, Defendant answers these Interrogatories in compliance with the discovery rules applicable to Massachusetts Superior Court proceedings.

1

**INTERROGATORY NO. 1:**

Please identify all computer or software systems used to record information about an employee's personal information (address, social security number, position, etc.), duties, working hours, or compensation.

**RESPONSE TO INTERROGATORY NO. 1:**

Defendant objects to this Interrogatory because it is overly broad and seeks information that is not relevant to the claims and defenses in this Action to the extent it seeks "all" computer systems used to record information about all employees of Defendant, including computer or software systems that are not relevant to this Action, computer or software systems that were not in use during the relevant time period (which, for purposes of these responses, is limited to April 28, 2018 to the present), and information related to positions other than the exempt, Massachusetts-based department managers at issue in this Action.

Subject to and without waiving these objections, Defendant states that the following computer and software systems were used by and/or contain relevant information regarding exempt, Massachusetts-based department managers during some or all of the relevant time period:

- "Kronos" is a scheduling software program that Defendant's exempt, Massachusetts-based department managers use to create the weekly work schedule for themselves and the employees that they supervise.  Kronos is also used daily by exempt, Massachusetts-based department managers to monitor Management Planning and Analytics and react to productivity and sales volumes throughout the week.

- "Mainframe" is a software system that Defendant's exempt, Massachusetts-based department managers use to order inventory and supplies for the department that they are responsible for managing.

- "Compass" is a software system through which Defendant's, exempt, Massachusetts-based department managers receive communications from the corporate and retail operations team regarding a number of topics, including critical leadership updates, information about items on sale, inventory, and online customer orders.

- "Control-D Online Reports" is an online computer platform that Defendant's exempt, Massachusetts-based department managers use to track their department's total profitability, including inventory and item integrity.

- "Computer Assisted Ordering" is a software system that Defendant's exempt, Massachusetts-based department managers use to plan and order inventory for their departments.

- "Production and Planning Tool" is a software program that Defendant's exempt, Massachusetts-based Bakery, Deli, Meat, and Produce department managers use to forecast daily needs for production-based items that will be produced to by associates throughout the day.

- "Average Cost Inventory System" is an inventory control software system that Defendant's exempt, Massachusetts-based department managers use to track inventory in their departments.

- Each exempt, Massachusetts-based department manager has access to a personal "U" drive on Defendant's computer network where they can draft, access, and save documents.

- The "Learning Management System" is a training software program used by Defendant's exempt, Massachusetts-based department managers to complete training modules related to their positions and to assign and oversee training for the employees that they supervise.

- "Microsoft Outlook" is the e-mail system used by Defendant's exempt, Massachusetts-based department managers to send and receive e-mail communications.

- Exempt, Massachusetts-based department managers have access to Hannaford's "Intranet" site, which is an internal website that contains information and various links regarding Hannaford's programs and other relevant information.

- "MeOnline" has been the software system that exempt, Massachusetts-based department managers access to enter or change their individual associate information. It included associate payroll and tax data, copies of pay checks, paid time off balances and other human resources information. "MeOnline" was a tool within the Company's broader Human Resources Information Technology ("HRIT") system of record, PeopleSoft. Effective September 26, 2021, the Company transitioned from PeopleSoft to SuccessFactors as its HRIT system of record.

- "Product Quality Feedback" is an online application that Defendant's exempt, Massachusetts-based department managers use to provide feedback regarding the quality of inventory items received, damaged or mis-picked. This feedback is submitted to the distribution centers that service Hannaford stores either for information purposes or for credit which is billed back to the store.

- "Presell Application" is an online ordering tool accessed by Defendant's exempt, Massachusetts-based department managers to pre-order key holiday items.

- "Direct Sales Ordering System" is an online ordering system used specifically by Defendant's exempt, Massachusetts-based bakery department managers to adjust orders coming from a specific vendor, LePage Bakeries.

**INTERROGATORY NO. 2:**

Please identify all individuals in the proposed class, including their name, dates of employment, position(s), address, telephone number(s), and email address(es).

**RESPONSE TO INTERROGATORY NO. 2:**

Defendant objects to this Interrogatory because, unless and until a class is certified by the Court, the identity and contact information for individuals in the "proposed class" is not relevant to the claims and defenses in this Action and would result in the disclosure of confidential, private personnel information.

Subject to and without waiving these objections, Defendant states that approximately 157 individuals have worked in one or more exempt department manager positions in Massachusetts from April 28, 2018 to the present.  The number of employees who have worked in each exempt department manager position in Massachusetts from April 28, 2018 to the present is as follows:

- Manager of Customer Service: 28.

- Produce Sales Manager: 25.

- Center Store Manager: 32.

- Bakery Sales Manager: 21.

- Deli Sales Manager: 22.

- Deli/Bakery Sales Manager: 11.

- Meat Market Sales Manager: 7.

- Meat Market/Seafood Sales Manager: 26.

- Deli/Seafood Sales Manager: 4.

The identities of these individuals will be provided if and only to the extent that Plaintiff's motion for class certification is granted.

**INTERROGATORY NO. 3:**

Please identify all stores in Massachusetts, including the address of the store, the departments in the store, and all individuals who have served as store manager and/or assistant store manager.

**RESPONSE TO INTERROGATORY NO. 3:**

Defendant objects to this Interrogatory because it is overly broad, unduly burdensome, and seeks information that is not relevant to the claims and defenses in this Action.

Subject to and without waiving these objections, Defendant states that the location of each store in Massachusetts at which one or more exempt department manager worked during the limitations period is as follows:

| Store # | Store Name | Street Address | Town | ST | Zip |
|---|---|---|---|---|---|
| 8003 | Lancaster | 118 Lancaster Street | Leominster | MA | 01453 |
| 8004 | Marlborough | 193 Boston Post Road West, Route 20 | Marlborough | MA | 01752 |
| 8005 | Middleborough | 8 Merchants Way | Middleboro | MA | 02346 |
| 8009 | Townsend | 18 Main Street, Harbor Village | Townsend | MA | 01469 |
| 8011 | Brookfield | 5 Gilbert Street | North Brookfield | MA | 01535 |
| 8012 | Twin City | 927 Merriam Ave, Twin City Plaza | Leominster | MA | 01453 |
| 8013 | Clinton | 333 Brook Street | Clinton | MA | 01510 |
| 8014 | Uxbridge | 158 No. Main Street | Uxbridge | MA | 01569 |
| 8017 | Waltham | 55 Russell Street | Waltham | MA | 02453 |
| 8019 | Gardner | 21 Timpany Blvd | Gardner | MA | 01440 |
| 8191 | Chelmsford | 66-2 Drum Hill Shopping Center | Chelmsford | MA | 01824 |
| 8192 | Dracut | 301 Pleasant Street | Dracut | MA | 01826 |
| 8327 | Lowell | 777 Rogers St. | Lowell | MA | 01852 |
| 8383 | Taunton | 255 Joseph E. Warner Blvd. | Taunton | MA | 02780 |
| 8388 | Lunenburg | 333 Mass Avenue, Lunenburg Crossing | Lunenburg | MA | 01462 |

## INTERROGATORY NO. 4:

Without limitation as to time or geography, please identify the most recent occasion, prior to the filing of this action, when the Defendant evaluated the classification of department managers.

## RESPONSE TO INTERROGATORY NO. 4:

Defendant objects to this Interrogatory because it seeks information protected by the attorney-client privilege and the work product doctrine. Defendant further objects to this Interrogatory because it seeks information that is not relevant to the claims or defenses in this Action. Defendant's state of mind and good faith are not at issue in this Action, and therefore, any prior evaluations Defendant may have conducted with respect to the classification of Massachusetts-based exempt department managers is not relevant. Defendant also objects to this Interrogatory because it is overly broad, unduly burdensome, and seeks information that is not relevant to the claims and defenses in this Action to the extent that it seeks information regarding exempt department managers outside of Massachusetts and/or information that pre-dates the relevant time period in this Action.

Subject to and without waiving these objections, Defendant is available to meet and confer with Plaintiff, and if Plaintiff agrees and stipulates that she will not argue that Defendant's response to this Interrogatory is a waiver of the attorney-client privilege, Defendant will provide a response.

## INTERROGATORY NO. 5:

Without limitation as to time or geography, please identify all grounds upon which Defendant relied when deciding to classify all department managers as exempt.

## RESPONSE TO INTERROGATORY NO. 5:

Defendant objects to this Interrogatory because it seeks information protected by the attorney-client privilege and the work product doctrine. Defendant further objects to this

Interrogatory because it seeks information that is not relevant to the claims or defenses in this Action.  Defendant's state of mind and good faith are not at issue in this Action, and therefore, the grounds upon which Defendant previously relied when deciding to classify its Massachusetts-based exempt department managers as exempt is not relevant. Defendant also objects to this Interrogatory because it is overly broad, unduly burdensome, and seeks information that is not relevant to the claims and defenses in this Action to the extent that it seeks information regarding exempt department managers outside of Massachusetts and/or information that pre-dates the relevant time period in this Action.

**INTERROGATORY NO. 6:**

Without limitation as to time or geography, please state the basis for the Defendant's contention that department managers were and are properly classified as exempt.

**RESPONSE TO INTERROGATORY NO. 6:**

Defendant objects to this Interrogatory because it is a premature contention Interrogatory and because it calls for an exhaustive, narrative response that is more appropriate for oral testimony.  Defendant also objects to this Interrogatory because it is overly broad, unduly burdensome, and seeks information that is not relevant to the claims and defenses in this Action to the extent that it seeks information regarding exempt department managers outside of Massachusetts and/or information that pre-dates the relevant time period in this Action.

Subject to and without waiving these objections, Defendant states that the general bases for its contention in this Action that each exempt, Massachusetts-based department manager position is exempt from the Massachusetts Wage Law's overtime and Sunday and holiday premium requirements is as follows:

1. **Manager of Customer Service:** The specific daily duties and responsibilities of each Manager of Customer Service vary significantly depending on a number of factors, including, but

not limited to, their store location, the weekly sales volume in their store, the daily customer volumes in their store, the number of employees assigned to their department, the specific Manager's skills and competencies, and their overall management style.  Generally speaking, the Manager of Customer Service manages the "front end" of the store where customers check out and/or return or exchange products, including managing the execution of all front-end retail operations and supervising a team of front-end associates.  In that role, Managers of Customer Service are expected to manage and organize their department in a manner that ensures that customers experience a high level of customer service.  Managers of Customer Service are also responsible for managing the revenue for the entire store, which includes ensuring the tills are counted each day and that all of the money and receipts are reconciled and accounted for.  The Managers of Customer Service in certain locations also manage the "Hannaford To-Go" personal shopping program in which store associates gather items throughout the store to complete on-line orders.

Managers of Customer Service supervise a team of part-time and full-time hourly associates, including one or more Assistant Department Managers and Service Leads.  The number of associates reporting to and supervised by the Manager of Customer Service varies by store and time of year and generally ranges from 35-95 associates.  The Managers of Customer Service manage and direct the work of these hourly associates.  The Managers of Customer Service identify the tasks that each associate must complete and dictate the order in which associates complete those tasks.  The Managers must continuously reprioritize associate tasks throughout the day in response to customer and store demands and the overall needs of their department.

The Managers of Customer Service must ensure that they schedule their associates to meet the particular needs of their department.  Each week, they create the weekly schedule for all

associates in their department, including approving any requested time-off.   At the end of each week, they must review each associate's timesheets and approve their hours.

The Managers of Customer Service are also responsible for overseeing and evaluating the work of the associates in their department.  Each year, they formally evaluate each associate in their department, which, at a minimum, requires a written assessment of the associate and a face-to-face meeting to discuss the associate's performance.  Additionally, the Managers of Customer Service evaluate associates throughout the year and address associate performance or behavioral issues whenever they occur by verbally counseling associates, documenting performance issues in "coaching memos," and/or taking progressive discipline when the Manager of Customer Service determines that more formal action, including but not limited to termination, is necessary.

The Managers of Customer Service are also responsible for hiring all associates in their department.  They identify openings within their department, interview prospective applicants, and make the hiring decision for each opening.  Managers of Customer Service also manage the on-boarding process and train all new associates in their department, and formally evaluate all new hires at 45 days and again at 90 days.

Certain Managers of Customer Service are responsible for training newly hired or future Managers.  These Managers are designated as "District Level Trainers" and oversee the training of new hires and future Managers of Customer Service through the Company's "Manager Trainee" program.

The Managers of Customer Service are responsible for ensuring that the employees that they supervise adhere to Hannaford's established food safety protocols and standard practice requirements.

The Managers of Customer Service may also be responsible for managing the entire store in the absence of a Store Manager or Assistant Store Manager.

The extent to which each Customer Service Manager engages in the above activities and the amount of time associated with these activities varies by individual.

2. **<u>Produce Sales Manager:</u>** The specific daily duties and responsibilities of each Produce Sales Manager vary significantly, depending on a number of factors, including, but not limited to, their store location, the weekly sales volume in their department, the number and types of products offered in their department, the number of employees assigned to their department, the specific Manager's skills and competencies, and their overall management style.  Generally speaking, Produce Sales Managers are responsible for managing retail operations for the Produce department, which, in most stores, includes fresh fruits, vegetables, and other perishable items. Among other things, Produce Sales Managers manage a team of associates who are responsible for making sure that products are placed in the appropriate locations and that any stand-alone product displays are constructed correctly and placed in the correct location in the store.  Produce Sales Managers are also responsible for ensuring that their department has sufficient products each day, and they are expected to analyze inventory levels and sales data, project anticipated product needs, and manage the product ordering process.

Produce Sales Managers supervise a team of part-time and full-time hourly associates, including one or more Assistant Department Managers and Produce Leads.  The number of associates reporting to the Produce Sales Manager varies by store and generally ranges from 7-15 associates.  Produce Sales Managers manage and direct the work of these hourly associates. Produce Sales Managers identify the tasks that each associate must complete and dictate the order in which associates complete those tasks.  Produce Sales Managers must continuously reprioritize

those tasks throughout the day in response to customer demands and the overall needs of their department.

Produce Sales Managers must ensure that they schedule their associates to meet the particular needs of their department.   Each week, Produce Sales Managers create the weekly schedule for all associates in their department, including approving any requested time-off.   At the end of each week, the Produce Sales Manager must review each associate's timesheets and approve their hours.

Produce Sales Managers are also responsible for overseeing and evaluating the work of the associates in their department.   Each year, Produce Sales Managers formally evaluate each associate in their department, which, at a minimum, requires a written assessment of the associate and a face-to-face meeting to discuss the associate's performance.   Additionally, Produce Sales Managers evaluate associates throughout the year and address associate performance or behavioral issues whenever they occur by verbally counseling associates, documenting performance issues in "coaching memos," and/or taking progressive discipline when the Produce Sales Manager determines that more formal action, including but not limited to termination, is necessary.

Produce Sales Managers are also responsible for hiring all of the associates in their department.   Produce Sales Managers identify openings within their departments, interview prospective applicants, and make the hiring decision for each opening. Produce Sales Managers also manage the on-boarding process and train all new associates in their department.   Produce Sales Managers formally evaluate all new hires at 45 days and again at 90 days.

Certain Produce Sales Managers are responsible for training future Produce Sales Managers.   Certain Produce Sales Managers are designated as "District Level Trainers" and oversee the training of newly hired and future Produce Sales Managers through the Company's

"Manager Trainee" program. Produce Sales Managers may also be responsible for managing the entire store in the absence of a Store Manager or Assistant Store Manager.

The Produce Sales Managers are responsible for ensuring that the employees that they supervise adhere to Hannaford's established food safety protocols and standard practice requirements. Produce Sales Managers are also responsible for the financial performance and success of their department, including but not limited to, meeting sales goals, growing sales, managing labor budgets, and meeting inventory shrink goals.

The extent to which each Produce Sales Manager engages in the above activities and the amount of time associated with these activities varies by individual.

3. **Center Store Manager:** The specific daily duties and responsibilities of each Center Store Manager vary significantly, depending on a number of factors, including, but not limited to, their store location, the weekly sales volume in their department, the volume and flow of customers in their store, the square footage of their store, the number of aisles and products offered in their department, the number of employees assigned to the department, the specific Manager's skills and competencies, and their overall management style.  Generally speaking, Center Store Managers are responsible for managing retail operations within the Center Store department, which, for most stores, encompasses the store aisles containing canned and other pre-packaged foods, the dairy and frozen foods section, and the health and beauty product aisles.  Among other things, Center Store Managers supervise a team of associates who are responsible for the placement of products and ensuring that stand-alone products displays are constructed correctly and placed in the most appropriate location in the store.  Center Store Managers are also responsible for ensuring that their department has sufficient products each day, and they are

expected to analyze inventory levels and sales data, project anticipated product needs, and manage the product ordering process.

Center Store Managers supervise a team of part-time and full-time hourly associates, including one or more Assistant Department Managers and Center Store Leads. The number of associates reporting to the Center Store Manager varies by store and generally ranges from 20 to 50 associates.  Center Store Managers manage and direct the work of these hourly associates. Center Store Managers identify the tasks that each associate must complete and dictate the order in which associates complete those tasks.  Center Store Managers must continuously reprioritize those tasks throughout the day in response to customer demands and the overall needs of their department.

Center Store Managers must ensure that they schedule their associates to meet the particular needs of their department.  Each week, Center Store Managers create the weekly schedule for all associates in their department, including approving any requested time-off.   At the end of each week, the Center Store Manager must review each associate's timesheets and approve their hours.

Center Store Managers are also responsible for overseeing and evaluating the work of the associates in their department.  Each year, Center Store Managers formally evaluate each associate in their department, which, at a minimum, requires a written assessment of the associate and a face-to-face meeting to discuss the associate's performance.  Additionally, Center Store Managers evaluate associates throughout the year and address associate performance or behavioral issues whenever they occur by verbally counseling associates, documenting performance issues in "coaching memos," and/or taking progressive discipline when the Center Store Manager determines that more formal action, including but not limited to termination, is necessary.

Center Store Managers are also responsible for hiring all of the associates in their department.   Center Store Managers identify openings within their departments, interview prospective applicants, and make the hiring decision for each opening. Center Store Managers also manage the on-boarding process and train all new associates in their department.  Center Store Managers formally evaluate all new hires at 45 days and again at 90 days.

Certain Center Store Managers are responsible for training future Center Store Managers. Certain Center Store Managers are designated as "District Level Trainers" and oversee the training of newly hired and future Center Store Managers through the Company's "Manager Trainee" program.

The Center Store Managers are responsible for ensuring that the employees that they supervise adhere to Hannaford's established food safety protocols and standard practice requirements. Center Store Managers are also responsible for the financial performance and success of their department, including but not limited to, meeting sales goals, growing sales, managing labor budgets, and meeting inventory shrink goals.     Center Store Managers may also be responsible for managing the entire store in the absence of a Store Manager or Assistant Store Manager.

The extent to which each Center Store Manager engages in the above activities and the amount of time associated with these activities varies by individual.

4.  **Bakery Sales Manager:** The specific daily duties and responsibilities of each Bakery Sales Manager vary significantly, depending on a number of factors, including, but not limited to, their store location, the weekly sales volume in the department, the products offered in their department, the number of employees assigned to their department, the specific Manager's skills and competencies, and their overall management style.  Generally speaking, Bakery Sales Managers

are responsible for managing the execution of retail operations for standalone Bakery departments, which, for stores that contain a stand-alone Bakery department, includes managing a team of associates responsible for preparing and placing fresh-made products, such as specialty breads, cakes, and other made-to-order items.  Among other things, Bakery Sales Managers must manage their team of associates to ensure that food items are prepared in a safe and efficient manner, that the customer ordering process is completed in an efficient manner, and that the department is adequately staffed each day to respond to customer demands.  Bakery Sales Managers are also responsible for ensuring that their department has sufficient supplies and products, and they are expected to analyze inventory levels and sales data, project anticipated product needs, and manage the ordering process.

Bakery Sales Managers supervise a team of part-time and full-time hourly associates, including one or more Assistant Department Managers and Bakery Leads. The number of direct reports varies by store and generally ranges from 5 to 15 associates.  Bakery Sales Managers supervise and direct the work of these hourly associates.  Bakery Sales Managers identify the tasks that each associate must complete and dictate the order in which associates complete those tasks. Bakery Sales Managers must continuously reprioritize those tasks throughout the day in response to customer demands and the overall needs of their department.

Bakery Sales Managers must ensure that they schedule their associates to meet the particular needs of their department.  Each week, Bakery Sales Managers create the weekly schedule for all associates in their department, including approving any requested time-off.   At the end of each week, the Bakery Sales Manager must review each associate's timesheets and approve their hours.

Bakery Sales Managers are also responsible for overseeing and evaluating the work of the associates in their department. Each year, Bakery Sales Managers formally evaluate each associate in their department, which, at a minimum, requires a written assessment of the associate and a face-to-face meeting to discuss the associate's performance. Additionally, Bakery Sales Managers evaluate associates throughout the year and address associate performance or behavioral issues whenever they occur by verbally counseling associates, documenting performance issues in "coaching memos," and/or taking progressive discipline when the Bakery Sales Manager determines that more formal action, including but not limited to termination, is necessary.

Bakery Sales Managers are also responsible for hiring all of the associates in their department. Bakery Sales Managers identify openings within their departments, interview prospective applicants, and make the hiring decision for each opening. Bakery Sales Managers also manage the on-boarding process and train all new associates in their department. Bakery Sales Managers formally evaluate all new hires at 45 days and again at 90 days.

Certain Bakery Sales Managers are responsible for training newly hired and future Bakery Sales Managers. Certain Bakery Sales Managers are designated as "District Level Trainers" and oversee the training of new hires and future Bakery Sales Managers through the Company's "Manager Trainee" program.

The Bakery Sales Managers are responsible for ensuring that the employees that they supervise adhere to Hannaford's established food safety protocols and standard practice requirements. Bakery Sales Managers are also responsible for the financial performance and success of their department, including but not limited to, meeting sales goals, growing sales, managing labor budgets, and meeting inventory shrink goals.

Bakery Sales Managers may also be responsible for managing the entire store in the absence of a Store Manager or Assistant Store Manager.

The extent to which each Bakery Sales Manager engages in the above activities and the amount of time associated with these activities varies by individual.

5. **Deli Sales Manager**: The specific daily duties and responsibilities of each Deli Sales Manager vary significantly, depending on a number of factors, including, but not limited to, their store location, the weekly sales volume in their department, the products offered in their department, the number of employees assigned to their department, the specific Manager's skills and competencies, and their overall management style.  Generally speaking, Deli Sales Managers are responsible for managing the execution of retail operations for stand-alone Deli departments, which, for stores that have a stand-alone Deli department, includes managing a team of associates who prepare and place fresh-cut deli products, such as deli meats and cheeses, and other made-to-order items.  Among other things, Deli Sales Managers manage their department and associates to ensure that the food items are prepared in a safe and efficient manner, that items are displayed and removed from the cases according to corporate and safety guidelines, and that the customer ordering process is completed in an efficient and customer-friendly manner.  Deli Sales Managers are also responsible for ensuring that their department has sufficient supplies and products, and are expected to analyze inventory levels and sales data, project anticipated product needs, and manage the ordering process.

Deli Sales Managers supervise a team of part-time and full-time hourly associates, including one or more Assistant Department Managers and Deli Leads.  The number of associates reporting to the Deli Sales Manager varies by store and generally ranges from 10 to 25 associates. Deli Sales Managers supervise and direct the work of these hourly associates.  Deli Sales Managers

identify the tasks that each associate must complete and dictate the order in which associates complete those tasks.  Deli Sales Managers must continuously reprioritize those tasks throughout the day in response to customer demands and the overall needs of their department.

Deli Sales Managers must ensure that they schedule their associates to meet the particular needs of their department.  Each week, Deli Sales Managers create the weekly schedule for all associates in their department, including approving any requested time-off.   At the end of each week, the Deli Sales Manager must review each associate's timesheets and approve their hours.

Deli Sales Managers are also responsible for overseeing and evaluating the work of the associates in their department.  Each year, Deli Sales Managers formally evaluate each associate in their department, which, at a minimum, requires a written assessment of the associate and a face-to-face meeting to discuss the associate's performance.  Additionally, Deli Sales Managers evaluate associates throughout the year and address associate performance or behavioral issues whenever they occur by verbally counseling associates, documenting performance issues in "coaching memos," and/or taking progressive discipline when the Deli Sales Manager determines that more formal action, including but not limited to termination, is necessary.

Deli Sales Managers are also responsible for hiring all of the associates in their department.  Deli Sales Managers identify openings within their departments, interview prospective applicants, and make the hiring decision for each opening.  Deli Sales Managers also manage the on-boarding process and train all new associates in their department.  Deli Sales Managers formally evaluate all new hires at 45 days and again at 90 days.

Certain Deli Sales Managers are responsible for training future Deli Sales Managers. Certain Deli Sales Managers are designated as "District Level Trainers" and oversee the training

of newly hired and future Deli Sales Managers through the Company's "Manager Trainee" program.

The Deli Sales Managers are responsible for ensuring that the employees that they supervise adhere to Hannaford's established food safety protocols and standard practice requirements. Deli Sales Managers are also responsible for the financial performance and success of their department, including but not limited to, meeting sales goals, growing sales, managing labor budgets, and meeting inventory shrink goals. Deli Sales Managers may also be responsible for managing the entire store in the absence of a Store Manager or Assistant Store Manager.

The extent to which each Deli Sales Manager engages in the above activities and the amount of time associated with these activities varies by individual.

6. **Deli/Bakery Sales Manager**: The specific daily duties and responsibilities of each Deli/Bakery Sales Manager vary significantly, depending on a number of factors, including, but not limited to, their store location, the weekly sales volume in their departments, the products offered in their departments, the number of employees assigned to their departments, the specific Manager's skills and competencies, and their overall management style. Generally speaking, Deli/Bakery Sales Managers manage the execution of retail operations in combined Deli/Bakery departments, which, for stores that have a combined Deli/Bakery department, combines the responsibilities of the stand-alone Deli Sales Manager and Bakery Sales Manager positions summarized above. Those summaries are incorporated herein.

7. **Meat Market Sales Manager:** The specific daily duties and responsibilities of each Meat Market Sales Manager vary significantly, depending on a number of factors, including, but not limited to, their store location, the weekly sales volume in their department, the specific products offered in their department, the number of employees assigned to their department, the specific

Manager's skills and competencies, and their overall management style. Generally speaking, Meat Market Sales Managers manage the execution of retail operations for stand-alone Meat departments, which, for stores that have a stand-alone Meat department, includes managing a team of associates who prepare and display fresh-cut beef, poultry, and pork products. Among other things, Meat Market Sales Managers manage their department and associates to ensure that food items are prepared in a safe and efficient manner, that items are displayed and removed from the cases according to corporate and safety guidelines, and that the department is adequately staffed each day to respond to customer demands. Meat Market Sales Managers are also responsible for ensuring that their department has sufficient supplies and products, and are expected to analyze inventory levels, project anticipated product needs, and manage the ordering process.

Meat Market Sales Managers supervise a team of part-time and full-time hourly associates, including one or more Assistant Department Managers and Meat Market Leads. The number of associates reporting to the Meat Market Sales Manager varies by store and generally ranges from 4 to 15 associates. Meat Market Sales Managers supervise and direct the work of these hourly associates. Meat Market Sales Managers identify the tasks that each associate must complete and dictate the order in which associates complete those tasks. Meat Market Sales Managers must continuously reprioritize those tasks throughout the day in response to customer demands and the overall needs of their department.

Meat Market Sales Managers must ensure that they schedule their associates to meet the particular needs of their department. Each week, Meat Market Sales Managers create the weekly schedule for all associates in their department, including approving any requested time-off. At the end of each week, the Meat Market Sales Manager must review each associate's timesheets and approve their hours.

21

Meat Market Sales Managers are also responsible for overseeing and evaluating the work of the associates in their department.  Each year, Meat Market Sales Managers formally evaluate each associate in their department, which, at a minimum, requires a written assessment of the associate and a face-to-face meeting to discuss the associate's performance.  Additionally, Meat Market Sales Managers evaluate associates throughout the year and address associate performance or behavioral issues whenever they occur by verbally counseling associates, documenting performance issues in "coaching memos," and/or taking progressive discipline when the Meat Market Sales Manager determines that more formal action, including but not limited to termination, is necessary.

Meat Market Sales Managers are also responsible for hiring all of the associates in their department.  Meat Market Sales Managers identify openings within their departments, interview prospective applicants, and make the hiring decision for each opening. Meat Market Sales Managers also manage the on-boarding process and train all new associates in their department. Meat Market Sales Managers formally evaluate all new hires at 45 days and again at 90 days.

Certain Meat Market Sales Managers are responsible for training future Meat Market Sales Managers.  Certain Meat Market Sales Managers are designated as "District Level Trainers" and oversee the training of newly hired and future Meat Market Sales Managers through the Company's "Manager Trainee" program.

The Meat Market Sales Managers are responsible for ensuring that the employees that they supervise adhere to Hannaford's established food safety protocols and standard practice requirements. Meat Market Sales Managers are also responsible for the financial performance and success of their department, including but not limited to, meeting sales goals, growing sales, managing labor budgets, and meeting inventory shrink goals.

Meat Market Sales Managers may also be responsible for managing the entire store in the absence of a Store Manager or Assistant Store Manager.

The extent to which each Meat Market Sales Manager engages in the above activities and the amount of time associated with these activities varies by individual.

8. **Meat Market/Seafood Sales Manager:** The specific daily duties and responsibilities of each Meat Market/Seafood Sales Manager vary significantly, depending on a number of factors, including, but not limited to, their store location, the weekly sales volume in their department, the specific products offered in their department, the number of employees assigned to their department, the specific Manager's skills and competencies, and their overall management style. Generally speaking, Meat Market/Seafood Sales Managers manage retail operations for combined Meat Market/Seafood departments, which, for stores that have combined Meat Market/Seafood departments, combines the responsibilities of the stand-alone Meat Market Manager position summarized above (and incorporated herein) with the responsibilities for managing the Seafood portion of the combined Meat/Seafood departments. Those summaries are incorporated herein.

9. **Deli/Seafood Sales Manager:** The specific daily duties and responsibilities of each Deli/Seafood Sales Manager vary significantly, depending on a number of factors, including, but not limited to, their store location, the weekly sales volume in their department, the products offered in their department, the number of employees assigned to their department, the specific Manager's skills and competencies, and their overall management style. Generally speaking, Deli/Seafood Sales Managers manage retail operations for combined Deli and Seafood departments, which, for stores that have combined Deli and Seafood departments, combines the responsibilities of the stand-alone Deli Sales Manager position described above (and incorporated

herein) with responsibilities for managing the Seafood portion of the combined Deli/Seafood department.

Defendant states this is a high-level response to Interrogatory No. 6 and does not exhaust each and every fact that forms the basis for its contention that its exempt, Massachusetts-based department managers were and are properly classified as exempt.

**INTERROGATORY NO. 7:**

Please state the basis for the Defendant's contention that a fluctuating work week method for computing overtime should apply if it is determined that department managers were misclassified as exempt and entitled to overtime.

**RESPONSE TO INTERROGATORY NO. 7:**

Defendant objects to this Interrogatory because it is a premature contention Interrogatory and because it calls for an exhaustive, narrative response that is more appropriate for oral testimony. Defendant further objects to this Interrogatory to the extent it implies or assumes that Defendant's exempt, Massachusetts-based department managers are or were misclassified as exempt and were entitled to overtime and Sunday and holiday premium pay during the relevant time period.

Subject to and without waiving these objections, Defendant states that if Plaintiff prevails on the merits of her claim, any damages owed to Plaintiff and/or the putative class must be calculated using the computation method set forth in *Overnight Motor Transp. Co v. Missel*, 316 U.S. 572, 580 (1942). *See Goodrow v. Lane Bryant, Inc.*, 432 Mass. 165, 175-76 (2000) (holding that *Missel's* calculation method applies to claims under the Massachusetts Wage Act); *see also* 454 CMR 27.03(3) (approving of overtime calculations pursuant to a "*bona fide* fluctuating workweek basis").

The hours that Plaintiff and Defendant's other exempt, Massachusetts-based department managers worked varied from week to week based on a variety of factors, including customer demand, staffing needs, and Plaintiff's and Defendant's other exempt, Massachusetts-based department managers' overall assessment of the needs of their respective departments and the hours they needed to work to meet those needs.   Plaintiff and Defendant's other exempt, Massachusetts-based department managers received the same fixed weekly salaries each week, regardless of how few or many hours that they worked each week, and their fixed weekly salaries were intended to compensate them for all hours that they worked each week.

Defendant states this is a high-level response to Interrogatory No. 7 and does not exhaust each and every fact that forms the basis for its contention that damages should be calculated using the *Missel* damages calculation.

**INTERROGATORY NO. 8:**
Please state the basis for the Defendant's contention that class certification is not warranted in this case.

**RESPONSE TO INTERROGATORY NO. 8:**

Defendant objects to this Interrogatory because it is a premature contention Interrogatory, and because it calls for an exhaustive, narrative response that is more appropriate for oral testimony.

Subject to and without waiving these objections, Defendant states that class certification is not proper because Plaintiff cannot satisfy the commonality, typicality, and adequacy requirements under Mass. R. Civ. P. 23(a) and the predominance and superiority requirements under Mass R. Civ. P. 23(b).  During the relevant period, there were nine distinct exempt department manager positions in one or more of Defendant's Massachusetts stores: Manager of Customer Service, Produce Sales Manager, Center Store Manager, Bakery Sales Manager, Deli Sales Manager,

Deli/Bakery Sales Manager, Meat Market Sales Manager, Meat Market/Seafood Sales Manager, and Deli/Seafood Sales Manager.  Not all of these positions exist at every Massachusetts store. The job duties and responsibilities of these positions are highly individualized and vary widely when compared to other department managers in the same store and department managers in other stores, including those department managers that share the same job title.  Moreover, the extent to which each individual department manager performs unique job duties and the amount of time each individual department manager spends on such job duties varies by individual, by department, and by store.  Accordingly, Plaintiff's claim that she and the other exempt, Massachusetts-based department managers were misclassified as exempt will require individual inquiry into each department manager's factual work history during the relevant time period.  Moreover, Plaintiff's claim that she was misclassified as an exempt Bakery Sales Manager is factually distinct from the claims of individual members of the purported class that worked in different departments and/or different stores.

Defendant states this is a high-level response to Interrogatory No. 8 and does not exhaust each and every fact that forms the basis for its contention that class certification is not appropriate.

**INTERROGATORY NO. 9:**

Without limitation as to time or geography, please state whether the Defendant has ever conducted an analysis concerning the exempt classification of department managers.

**RESPONSE TO INTERROGATORY NO. 9:**

Defendant objects to this Interrogatory because it seeks information protected by the attorney-client privilege and the work product doctrine. Defendant further objects to this Interrogatory because it seeks information that is not relevant to the claims or defenses in this Action.  Defendant's state of mind and good faith are not at issue in this Action, and therefore, any prior evaluations Defendant may have conducted with respect to the classification of

Massachusetts-based exempt department managers is not relevant.  Defendant also objects to this Interrogatory because it is overly broad, unduly burdensome, and seeks information that is not relevant to the claims and defenses in this Action to the extent that it seeks information regarding exempt department managers outside of Massachusetts and/or information that pre-dates the relevant time period in this Action.

Subject to and without waiving these objections, Defendant is available to meet and confer with Plaintiff, and if Plaintiff agrees and stipulates that she will not argue that Defendant's response to this Interrogatory is a waiver of the attorney-client privilege, Defendant will provide a response.

**INTERROGATORY NO. 10:**

Without limitation as to time or geography, please state whether the Defendant has ever conducted a department-by-department analysis concerning the exempt classification of department managers.

**RESPONSE TO INTERROGATORY NO. 10:**

Defendant objects to this Interrogatory because it seeks information protected by the attorney-client privilege and the work product doctrine. Defendant further objects to this Interrogatory because it seeks information that is not relevant to the claims or defenses in this Action.  Defendant's state of mind and good faith are not at issue in this Action, and therefore, any prior evaluations Defendant may have conducted with respect to the classification of Massachusetts-based exempt department managers is not relevant. Defendant also objects to this Interrogatory because it is overly broad, unduly burdensome, and seeks information that is not relevant to the claims and defenses in this Action to the extent that it seeks information regarding exempt department managers outside of Massachusetts and/or information that pre-dates the relevant time period in this Action.

Subject to and without waiving these objections, Defendant is available to meet and confer with Plaintiff, and if Plaintiff agrees and stipulates that she will not argue that Defendant's response to this Interrogatory is a waiver of the attorney-client privilege, Defendant will provide a response.

## INTERROGATORY NO. 11:

Without limitation as to time or geography, please state whether the Defendant has ever conducted a store-by-store analysis concerning the exempt classification of department managers.

## RESPONSE TO INTERROGATORY NO. 11:

Defendant objects to this Interrogatory because it seeks information protected by the attorney-client privilege and the work product doctrine. Defendant further objects to this Interrogatory because it seeks information that is not relevant to the claims or defenses in this Action. Defendant's state of mind and good faith are not at issue in this Action, and therefore, any prior evaluations Defendant may have conducted with respect to the classification of Massachusetts-based exempt department managers is not relevant. Defendant also objects to this Interrogatory because it is overly broad, unduly burdensome, and seeks information that is not relevant to the claims and defenses in this Action to the extent that it seeks information regarding exempt department managers outside of Massachusetts and/or information that pre-dates the relevant time period in this Action.

Subject to and without waiving these objections, Defendant is available to meet and confer with Plaintiff, and if Plaintiff agrees and stipulates that she will not argue that Defendant's response to this Interrogatory is a waiver of the attorney-client privilege, Defendant will provide a response.

## INTERROGATORY NO. 12:

If the Defendant has not conducted an analysis concerning the exempt classification of department managers, whether on a department-by-department and/or store-by- store basis or not, please state why.

**RESPONSE TO INTERROGATORY NO. 12:**

Defendant objects to this Interrogatory because it seeks information protected by the attorney-client privilege and/or the work product doctrine.  Defendant further objects to this Interrogatory because it seeks information that is not relevant to the claims or defenses in this Action.  Defendant's state of mind and good faith are not at issue in this Action, and therefore, any prior evaluations Defendant may have conducted with respect to the classification of Massachusetts-based exempt department managers is not relevant.  Defendant also objects to this Interrogatory because it is overly broad, unduly burdensome, and seeks information that is not relevant to the claims and defenses in this Action to the extent that it seeks information regarding exempt department managers outside of Massachusetts and/or information that pre-dates the relevant time period in this Action.

Subject to and without waiving these objections, Defendant is available to meet and confer with Plaintiff, and if Plaintiff agrees and stipulates that she will not argue that Defendant's response to this Interrogatory is a waiver of the attorney-client privilege, Defendant will provide a response.

**INTERROGATORY NO. 13:**

Please state, by positions and names of individuals currently holding those positions, who at Defendant is responsible for the classification of department managers as exempt or non-exempt.

**RESPONSE TO INTERROGATORY NO. 13:**

 Defendant objects to this Interrogatory because it seeks information that is not relevant to the claims or defenses in this Action.  Defendant's state of mind and good faith are not at issue in this Action, and therefore, the identity of the individuals responsible for the classification of Defendant's Massachusetts-based exempt department managers is not relevant.  Defendant also objects to this Interrogatory because it is overly broad, unduly burdensome, and seeks information

that is not relevant to the claims and defenses in this Action to the extent that it seeks information regarding exempt department managers outside of Massachusetts and/or information that pre-dates the relevant time period in this Action.

Subject to and without waiving these objections, Defendant states that its pay policies and practices related to its exempt, Massachusetts-based department managers are developed and maintained by representatives in Defendant's Human Resources department.  Employees who currently hold those positions include: Margo Peffer and Elizabeth Bergen.

**INTERROGATORY NO. 14:**

Please identify all records that, to the Defendant's knowledge, can be used to determine whether or when a department manager was at their assigned store, including without limitation computer records, video footage, or records of arrival or departure times.

**RESPONSE TO INTERROGATORY NO. 14:**

Defendant objects to this Interrogatory because it is overly broad, unduly burdensome, and seeks information that is not relevant to the claims and defenses in this Action to the extent that it seeks information regarding exempt department managers outside of Massachusetts and/or information that pre-dates the relevant time period in this Action.  Defendant further objects to this Interrogatory as overly broad and unduly burdensome to the extent it requires identification of "all" records.

Subject to and without waiving these objections, Defendant states that it does not require its exempt, Massachusetts-based department managers to clock in or out for work or otherwise track their arrival or departure time or their working time.  In exercising their discretion and judgment as the managers of their respective departments and the supervisors of the employees therein, each exempt, Massachusetts-based department manager prepare a weekly work schedule for themselves and for all of the employees that they supervise, but, once prepared, each

department manager has discretion to deviate from the schedule based on their assessment of the

needs of the business and the priorities within their respective department(s).  A review of the

emails that each exempt, Massachusetts-based department manager sent from their work email

accounts, the edits each of them made in Defendant's scheduling and ordering systems, and their

electronic training records may provide insight as to the dates and times that each department

manager worked.  This review would necessarily require review of each individual department

manager's unique activity and would be the antitheses of the class action treatment that Plaintiff

is seeking in this case.


**INTERROGATORY NO. 15:**

Please describe the chain of command (that is, each successively higher level of supervisor)
for department managers, starting with their immediate supervisor(s) and continuing to the highest
position in the company, including the title of each position, the working location of each position
(in general terms, such as store, regional office, corporate office, etc.), and a brief description of
the duties of each position.

**RESPONSE TO INTERROGATORY NO. 15:**

Defendant objects to this Interrogatory because it is overly broad and seeks information

that is not relevant to the claims and defenses in this Action.  Defendant further objects to this

Interrogatory because it is overly broad, unduly burdensome, and seeks information that is not

relevant to the claims and defenses in this Action to the extent that it seeks information regarding

exempt department managers outside of Massachusetts and/or information that pre-dates the

relevant time period in this Action.

Subject to and without waiving these objections, Defendant states that all exempt,

Massachusetts-based department managers report directly to the Store Manager in their assigned

store. Each Store Manager in Massachusetts reports to a Director of Operations.  The Directors of

Operations report to a Vice President of Divisional Operations.  The Vice President of Divisional

Operations reports to the Senior Vice President of Omnichannel Operations.  The Senior Vice President of Omnichannel Operations reports to the President.

***

Dated:  September 30, 2021

**DEFENDANT HANNAFORD BROS. CO., LLC,**

By its attorneys,

By:   */s/ Christopher M. Pardo*
Christopher M. Pardo
(BBO# 674674)
 *cpardo@HuntonAK.com*
Elizabeth L. Sherwood
(BBO# 687866)
 *esherwood@HuntonAK.com*
HUNTON ANDREWS KURTH LLP
60 State Street, Suite 2400
Boston, MA 02109
Tel: (617) 648-2800
Fax: (617) 433-5022

- and -

Ryan A. Glasgow (*pro hac vice* forthcoming)
 *rglasgow@HuntonAK.com*
HUNTON ANDREWS KURTH LLP
Riverfront Plaza, East Tower
951 East Byrd Street
Richmond, VA 23219
Tel:  (804) 788-8791
Fax:  (804) 343-4897

## **CERTIFICATION**

I, [                    ], state under the penalties of perjury that I have read the foregoing responses and either have personal knowledge of the contents thereof, or the information was compiled by individuals in Hannaford Bros. Co., LLC with personal knowledge, and that they are true to the best of my knowledge, information, and belief.

_____

[                    ]

Dated: _____

33

## <u>CERTIFICATION OF SERVICE</u>

I hereby certify that a true copy of the above document was served upon counsel of record for the Plaintiff by electronic mail on September 30, 2021.

*/s/ Christopher M. Pardo*
Christopher M. Pardo