**UNITED STATES DISTRICT COURT**
**DISTRICT OF MASSACHUSETTS**

Civil Action No. 1:21-cv-11901-WGY
Civil Action No. 1:22-cv-10672-WGY

JUDITH PRINZO, on behalf of herself )
and all other employees similarly situated, )
)
      Plaintiff, )
)
v. )
)
HANNAFORD BROS. CO., LLC, )
)
      Defendant. )

**ASSENTED-TO MOTION FOR PRELIMINARY APPROVAL OF**
**CLASS ACTION SETTLEMENT**

## Table of Contents

Background ................................................................................................................3

Terms of Proposed Settlement ...................................................................................5

Argument ..................................................................................................................7

    1. The settlement amount is fair, reasonable, and adequate. ...................................8

    2. The proposed payment to Ms. Prinzo is fair and reasonable. ...........................10

    3. The proposed attorneys' fees and costs are fair and reasonable. ........................12

    4. The proposed notice satisfies Fed. R. Civ. P. 23 ...............................................15

Conclusion ..............................................................................................................15

Exhibit 1 (Settlement Agreement)

Exhibit 2 (Proposed Notice)

Exhibit 3 (Proposed Order)

Pursuant to Fed. R. Civ. P. 23, Plaintiff Judith Prinzo, on behalf of herself and all others similarly situated, and with the Defendant's assent, requests preliminary approval of a proposed settlement that resolves the two above-captioned class action lawsuits that Plaintiff has filed against Defendant. A copy of the settlement agreement is attached as **Exhibit 1**. Ms. Prinzo also seeks approval of a proposed notice to be sent to Rule 23 class members, a copy of which is attached as **Exhibit 2**. A proposed order granting preliminary approval is attached as **Exhibit 3**.

**Background**

Hannaford Bros. Co., LLC ("Hannaford") owns and operates supermarkets throughout Massachusetts and surrounding states. Ms. Prinzo formerly worked as a Bakery Sales Manager at Hannaford's store in Middleboro, Massachusetts.

On April 21, 2021, Ms. Prinzo filed a Class Action Complaint in Plymouth Superior Court. The Complaint asserts three counts under Massachusetts law, alleging failure to pay overtime as required by G.L. c. 151, § 1A, failure to pay premium wages for work performed on Sundays, G.L. c. 136, § 6, and failure to pay premium wages for work on covered holidays, G.L. c. 136, § 13. Hannaford denies the allegations contained in the Class Action Complaint and contends that Plaintiff and all of the class members were properly classified as exempt under the Massachusetts Wage Act ("MWA").

After an initial period of discovery, the case was removed to this Court. The Court granted Ms. Prinzo's initial motion to remand, but Hannaford removed the case again, and Ms. Prinzo's second motion to remand was denied. The MWA case is currently docketed as Civil Action No. 1:21-cv-11901-WGY (the "MWA Case"). The parties proceeded to engage in extensive discovery, including multiple rounds of written discovery, the production of well over

100,000 pages of documents, numerous depositions of Hannaford witnesses, and a full-day deposition of Ms. Prinzo.

On February 3, 2023, the Court issued an order certifying the following class: "All persons who work or have worked between January 12, 2018 and the present for Hannaford in Massachusetts as fresh department managers – including all (i) Bakery Sales Managers, (ii) Deli Sales Managers, (iii) Deli/Bakery Sales Managers, (iv) Produce Sales Managers, (v) Meat Market Managers, (vi) Meat Market/Seafood Sales Managers, and (vii) Deli/Seafood Managers – who did not receive overtime premium pay for all hours worked over 40 in a workweek, did not receive a premium for hours worked on Sunday, or did not receive a premium for hours worked on Protected Holidays."  (Dkt. 47) A notice was issued to the certified class, and 6 class members timely requested exclusion from the class.

Separately, on May 4, 2022, Ms. Prinzo filed a second lawsuit against Hannaford under the Fair Labor Standards Act on behalf of herself and nationwide class of current and former "fresh department managers," styled as *Judith Prinzo v. Hannaford Bros. Co., LLC,* Case No. 1:22-cv-10672-WGY (the "FLSA Case").  The FLSA Case has not been certified, and to date, only three putative class members have filed consents to join the case (Dawn Eringi, Avery Sartelle, and Amanda Tracy).  Hannaford likewise denies the allegations in the FLSA Case.[1]

On July 10, 2023, following the Rule 23 class notice period, the parties engaged in a full-day, in-person mediation with Mark Irvings, a highly regarded mediator with extensive

---

[1] In fact, on June 6, 2022, Hannaford filed a Motion to Dismiss the FLSA Case (Dkt. 9).  The Court initially granted that Motion on October 4, 2022 (Dkt. 20), but during a subsequent Status Conference on November 2, 2022, the Court requested that the parties file additional briefing on the Motion.  Those briefs were filed (Dkt. 29, 31), and the issue remains pending before the Court.

experience in wage and hour class actions. As a result of that process, the parties ultimately

agreed to the terms of a proposed settlement to resolve both the MWA Case and the FLSA Case.

### Terms of Proposed Settlement

The proposed settlement requires payment by Hannaford of $1,048,000, plus the

employer's share of payroll taxes for any payments characterized under the settlement as wages.

For comparison purposes, and based on damages estimates prepared  by Class Counsel, if

members of the class worked 5 hours of overtime  for 65% of weeks during the year (as alleged

by Ms. Prinzo),[2] the estimated amount of unpaid overtime wages at issue in this case would be

about $725,000, assuming all members of the class were non-exempt and therefore entitled to

overtime.

Of the total settlement amount, the agreement proposes that one-third of the settlement

amount be allocated for attorneys' fees; that Ms. Prinzo receive total payments of $75,000,

which includes her share of alleged unpaid wages and a service award as incentive

compensation; that $20,000 be allocated to litigation and administrative costs (including, for

example, the costs of a third-party administrator, who will manage the notice, claims, and

settlement payment process); and that $603,410 be distributed to members of the class (the

"Class Fund") (which, as noted above, would constitute approximately 80% of the class

members' estimated unpaid overtime wages).

The proposed settlement also resolves the FLSA Case. As noted above, no collective or

class has been certified in that case, and of the three individuals (in addition to Ms. Prinzo) who

---

[2] It is expected that class members would have weeks during which they did not work overtime
based on paid holidays, vacation days, sick days, or other modifications to their schedule. Ms.
Prinzo, for example, claims that she had overtime hours in about 34 weeks of the year, or about
65% of the year.

opted into that case, two are already members of the Rule 23 Class in the MWA case and therefore eligible for a pro rata share of the Class Fund. With respect to the one and only opt-in plaintiff who is not a member of the Rule 23 Class in the MWA case, Amanda Tracy, the proposed agreement provides Tracy $424, an amount that likely exceeds her potential damages given that she worked in a covered position for only about five weeks, at most, during the longest possible limitations period.  Class counsel has conferred with Ms. Tracy, and she has agreed to accept this amount in settlement of her claims in the FLSA Case.

If the Court preliminarily approves the settlement and proposed notice, the approved notice will be sent to members of the Rule 23 Class in the MWA Case. Notice will be sent by regular mail, and any returned notices will be researched using commercially-available databases to find updated addresses. Class members will be given a period of 45 days to exclude themselves from or object to the settlement. The parties have agreed that class members do not need to file a claim form to participate in the settlement.  Only those class members who affirmatively exclude themselves from the settlement will not be entitled to participate in the settlement. Following the notice process, Plaintiff will file an Assented-To Motion for Final Approval of Class Action Settlement, which will report on the results of the notice process, including any individuals who object to or exclude themselves from the settlement.

Assuming that the settlement is finally approved after the notice process and after the final approval hearing, the Class Fund will be divided on a pro rata basis to the class members who did not exclude themselves from the settlement. Each eligible class member's share of the Class Fund will be calculated based solely on their salary and periods of eligible employment during the class period. Because there are no records of actual hours worked, the calculation will

assume that all eligible members worked the same number of hours each week that they worked in a covered position.

Any checks that are not cashed within 120 days after issuance will be cancelled, and replacement checks will be submitted to the Unclaimed Property Division of the Commonwealth of Massachusetts Treasurer's Office in the name of the applicable class member.

Additional details regarding the proposed settlement are set forth in the agreement itself, which is attached as **Exhibit 1**.

**Argument**

A class action may not be settled or compromised without the approval of the Court. Fed. R. Civ. P. 23(e). At the preliminary approval stage, a court should determine whether there is cause "to submit the [settlement] to class members" and hold a later hearing "as to its fairness." *In re Traffic Executive Ass'n,* 627 F.2d 631, 634 (2d Cir. 1980). *See also* Herbert B. Newberg & Alba Conte, *Newberg on Class Actions* ("*Newberg*") (4th ed. 2002) § 11.25 ("If the preliminary evaluation of the proposed settlement does not disclose grounds to doubt its fairness…and appears to fall within the range of possible approval," the court should permit notice to issue.). After the notice period, the Court will hold a hearing to consider final approval in light of the class members' response to the notice and all other relevant information.

Likewise, under the FLSA, the Court may approve a settlement of FLSA claims upon a finding that "all parties to the action have agreed to it, and that it represents a fair and reasonable resolution of a bona fide dispute over FLSA provisions." *Singleton v. AT&T Mobility, Servs., LLC*, 146 F. Supp. 3d 258, 260 (D. Mass. 2015).

1.      **The proposed settlement is fair, reasonable, and adequate.**

It is well established that settlements are favored. *Newberg on Class Actions*, §11:41 ("The compromise of complex litigation is encouraged by the courts and favored by public policy"). *See also Cabot Corp. v. AVX Corp.*, 448 Mass. 629, 638 (2007) (recognizing a "well-established public policy favoring the private settlement of disputes"); *E.E.O.C. v. Astra U.S.A., Inc.*, 94 F.3d 73 8, 744 (1st Cir. 1996) ("We do not doubt that public policy strongly favors encouraging voluntary settlement" of class action claims.).

The advantages to the parties and the courts are particularly apparent in the compromise of class actions, which are "often complex, drawn out proceedings demanding a large share of finite judicial resources." *Mayfield v. Barr*, 985 F.2d 1090, 1092 (D.C. Cir. 1993). *See also Cotton v. Hinton*, 559 F.2d 1326, 1331 (5th Cir. 1977) ("In the class action context in particular, 'there is an overriding public interest in favor of settlement,' [which] minimizes the litigation expenses of both parties and also reduces the strain such litigation imposes upon already scarce judicial resources").

Before granting approval of a proposed class action settlement, the Court must find that the settlement is fair, reasonable, and adequate. *Sniffin v. Prudential Ins. Comp.*, 395 Mass. 415, 421-22 (1985). "In determining whether the settlement is fair, reasonable, and adequate, a trial judge should consider various factors." *Id.* at 422. A presumption of fairness is established where the parties can show that: (1) the settlement was the product of arms' length bargaining; (2) sufficient discovery and investigation has been taken to enable counsel to act intelligently; (3) the proponents of the settlement are counsel experienced in similar litigation; and (4) the number of objectors or interests they represent is not large when compared to the class as a whole. *Newburg on Class Actions* § 11:41. *See also In re M3 Power Razor System Marketing & Sales*

*Practice Litigation*, 270 F.R.D. 45, 62-63 (D. Mass. 2010) (identifying same factors as establishing a "presumption that the settlement is within the range of reasonableness"); *In re Pharm. Indus. Average Wholesale Price Litig.*, 588 F.3d 24, 32-33 (1st Cir. 2009) ("If the parties negotiated at arm's length and conducted sufficient discovery, the district court must presume the settlement is reasonable.")  All of these considerations are satisfied here.

First, the negotiations occurred at arms' length. The parties (including Ms. Prinzo and representatives from Hannaford) and their counsel engaged in a day-long, in-person mediation with a professional mediator who has substantial experience with wage and hour class actions. The parties took opposing positions with respect to liability and damages but were able to reach a compromise. Second, the parties engaged in substantial discovery prior to reaching a proposed agreement. "The pertinent question is 'whether counsel had an adequate appreciation of the merits of the case before negotiating.'" *Beckman v. KeyBank, N.A.*, 293 F.R.D. 467, 475 (S.D.N.Y. 2013), *quoting In re Warfarin Sodium Antitrust Litig.,* 391 F.3d 516, 537 (3d Cir. 2004) (internal quotation marks omitted). In this case, counsel had a well-developed appreciation, informed by extensive discovery, of the merits (and risks) of the case. Moreover, that assessment of the case was further supplemented by "participation in [the] day-long mediation [, which] allowed them to further explore the claims and defenses." *Id*. Third, as this Court previously recognized when certifying a class in this case, Class Counsel are experienced in employment law and class action litigation. The issue of class objections cannot be evaluated until after the claim period

The total amount of the settlement is fair, reasonable, and adequate in the context of this case. As noted above, Class Counsel estimate that the unpaid overtime wages in this case total about $725,000 using a reasonable set of assumptions. The total settlement is more than 1.4-

times that amount. Although Ms. Prinzo believes that she and the class have a strong argument as to liability, there remain substantial risk factors, including a risk of decertification, the risk of a ruling at summary judgment or at trial that class members were properly classified as exempt from overtime, the risk of an award of damages that is lower than expected, and the risk of a lengthy and uncertain appeal process.  Indeed, Hannaford has consistently maintained that Ms. Prinzo and all other class members were properly classified as exempt under the executive, administrative, and combination exemptions and were, therefore, not entitled to or eligible for any overtime compensation under the MWA or FLSA.  If this matter had continued, Hannaford was prepared to move for summary judgement on all claims and for decertification of the class. Relative to their potential damages, the settlement guarantees significant recoveries for eligible class members, while avoiding the delays and risks of litigation, including the risk of no recovery at all.

2.      **The proposed payment to Ms. Prinzo is fair and reasonable.**

The Court need not make a final ruling on the proposed payment to Ms. Prinzo until the time of final approval (when it can assess any objections), but the proposed payment is intended to compensate her for the significant effort and risk associated with her role in serving as the named plaintiff, as well as her execution of a broader release. Courts have widely recognized that incentive awards serve an important function in promoting enforcement of state and federal law by private individuals, while encouraging class action settlements. *See In re Relafen Antitrust Litig.*, 231 F.R.D. 52, 82 (D. Mass. 2005) ("Incentive awards are recognized as serving an important function in promoting class action settlements"), *quoting In re Lupron*, 228 F.R.D. 75, 98 (D. Mass. 2005); *In re Compact Disc Min. Adver. Price Antitrust Litig.*, 292 F. Supp. 2d 184, 189 (D. Me. 2003) ("Because a named plaintiff is an essential ingredient of any class action, an

incentive award can be appropriate to encourage or induce an individual to participate in the suit"). As one court recently noted, "[s]ervice awards [i.e., incentive payments] are common in class action cases and serve to compensate plaintiffs for the time and effort expended in assisting the prosecution of the litigation, the risks incurred by becoming and continuing as a litigant, and any other burdens sustained by the plaintiffs. . . It is important to compensate plaintiffs for the time they spend and the risks they take." *Beckman*, 293 F.R.D. at 483 (citations omitted).

A critical factor in determining Ms. Prinzo's proposed payment in this case was her rejection of an unsolicited, individual settlement offer, prior to class certification, in the amount of $74,999. Ms. Prinzo's rejection of that offer ensured that the case would proceed as a class action, bringing significant benefits to members of the class who likely would have received nothing at all if she had pursued an individual settlement. Significantly, Ms. Prinzo did not try to use the threat of a class action to try to negotiate an even greater individual settlement; instead, she simply rejected Hannaford's offer and proceeded to seek certification on behalf of a class. When Ms. Prinzo rejected Hannaford's offer, she was taking a significant risk that she would receive nothing at all, all for the benefit of her fellow class members. In addition, as part of the proposed settlement, Ms. Prinzo is executing a broad, general release, while members of the settlement class are releasing only the overtime, Sunday, and holiday pay claims alleged in the complaint.

Incentive awards serve a particularly important role in employment class actions. Named plaintiffs may risk their livelihood to bring a case forward on behalf of their fellow co-workers. Courts have recognized the important role of class actions in the employment context precisely because of this fear of potential retaliation. *See, e.g., Perez v. Safety-Kleen Systems, Inc.*, 253 F.R.D. 508, 520 (N.D. Cal. 2008) (concluding class action was superior because "some class

members may fear reprisal"); *Guzman v. VLM, Inc.*, 2008 WL 597186, at *8 (E.D.N.Y. 2008) (noting "valid concern" that "many employees will be reluctant to participate in the action due to fears of retaliation"). This same consideration makes incentive awards appropriate in employment class action settlements, as well: "[Incentive] awards are particularly appropriate in the employment context. In employment litigation, the plaintiff is often a former or current employee of the defendant, and thus, by lending his name to the litigation, he has, for the benefit of the class as a whole, undertaken the risk of adverse actions by the employer or co-workers." *Frank v. Eastman Kodak Co.*, 228 F.R.D. 174, 187 (W.D.N.Y. 2005).

**3.      The proposed attorneys' fees and costs are fair and reasonable.**

With respect to approving the proposed allocation to attorneys' fees and costs, the Court need not make a final ruling until the time of final approval (when it can assess any objections), but the proposed award of fees is facially reasonable. To date, Class Counsel have incurred fees and costs exceeding $100,000 in connection with extensive discovery practice, two contested motions to remand, a motion to dismiss, a contested class certification motion, and settlement negotiations. Class Counsel expect to spend considerably more time with the settlement approval and administration process. Class Counsel have advanced over $14,000 in expenses, including expenses for filing fees, deposition transcripts, and mediation fees. In or prior to their motion for final approval, Class Counsel will submit detailed reports of their time and expenses.

Courts frequently favor an award of fees from a common fund, as called for by the proposed settlement in this case. As the Supreme Court has explained:

> [T]his Court has recognized consistently that a litigant or a lawyer who recovers a common fund for the benefit of persons other than himself or his client is entitled to a reasonable attorneys' fee from the fund as a whole. . . . Jurisdiction over the fund involved in the litigation allows a Court to prevent . . . inequity by assessing attorney's fees against the entire fund, thus spreading fees proportionately among those benefited by the suit.

*Boeing Co. v. Van Gemert*, 444 U.S. 472, 478 (1980) (citations omitted).

When awarding fees from a common fund, the "percentage of the fund" method is preferred over the lodestar method. As the First Circuit observed, the percentage method is less burdensome to administer than the lodestar method. *In re Thirteen Appeals*, 56 F.3d 295, 307 (1st Cir. 1995). The court also endorsed the percentage method because it is result-oriented, and therefore promotes a more efficient use of attorney time – a loadstar method may give attorneys an incentive to spend as many hours as possible on the litigation and may discourage early settlements. *Id.* When using the percentage method, courts routinely approve fee awards that represent one-third of the settlement fund.[3]

An award of 33 percent of the fund is consistent with the vital role that contingency arrangements play in making legal counsel available to individuals who cannot afford hourly fees. Unlike traditional firms that receive hourly fees on a monthly basis, employment counsel who take cases on contingency often spend years litigating cases (typically while incurring significant out-of-pocket expenses for experts, transcripts, travel, etc.), without receiving any

---

[3]      There are numerous examples of cases in which a one-third fee was approved, including: *Chalverus v. Pegasystems, Inc.*, C.A. No. 97-12570-WGY (December 19, 2000) (awarding as an attorneys' fee one-third of a more than $5 million recovery); *In re Lithotripsy Antitrust Litigation*, No. 98 C 8394, 2000 U.S. Dist. LEXIS 8143 at *6-7 (N.D. Ill. June 12, 2000) (noting that 33.3% of the fund plus expenses is well within the generally accepted range of the attorneys fee awards in class-action lawsuits); *In re Picturetel Corporation Sec. Litig.*, C.A. No. 97-12135-DPW (D. Mass. Nov. 4, 1999) (approving award of one-third of a $12 million settlement fund); *Zeid v. Open Environment Corp.*, C.A. No. 96-12466-EFH (D. Mass. June 24, 1999) (awarding a fee of one-third of a $6 million settlement); *In re Medical X-Ray Film Antitrust Litigation*, CV-93-5904, 1998 U.S. Dist. LEXIS 14888 at *21 (E.D.N.Y. Aug. 7, 1998) (awarding a fee of $13 million, which represented one-third of the settlement); *In re Copley Pharmaceutical, Inc. Sec. Litig.*, C.A. No. 94-11897-WGY (D. Mass. Feb. 8, 1996) (awarding one-third of a $6.3 million settlement fund); *In re Crazy Eddie Securities Litig.*, 824 F. Supp. 320, 325-26 (E.D.N.Y. 1993) (awarding 34% of a $42 million fund); *Hwang v. Smith Corona Corp.*, B.89-450 (D. Conn. Mar. 12, 1992) (awarding one-third of $24 million fund).

ongoing payment for their work. Sometimes fees and expenses are recovered; other times, despite hundreds of hours of work, nothing is recovered. Indeed, Class Counsel currently are litigating other cases on a contingency basis in which they have well over $100,000 in attorney time or have spent well over $100,000 in expert fees or other costs while facing a significant risk of recovering nothing. This type of practice is viable only if attorneys, having received nothing for their work on some cases, receive more in other cases than they would if they charged hourly fees. Courts have long recognized this reality. *See, e.g., Hensley v. Eckerhart*, 461 U.S. 424, 448 (1983) (noting that "[a]ttorneys who take cases on contingency, thus deferring payment of their fees until the case has ended and taking upon themselves the risk that they will receive no payment at all, generally receive far more in winning cases than they would if they charged an hourly rate"); *In re Union Carbide Corp. Consumer Products Business Securities Litigation*, 724 F. Supp. 160, 168 (S.D.N.Y. 1989) ("Contingent fee arrangements implicitly recognize the risk factor in litigation and that the winning cases must help pay for the losing ones if a lawyer who represents impecunious plaintiffs, or those plaintiffs not so fully committed as to put their own money where their mouth is, will remain solvent and available to serve the public interest.").  By permitting clients to obtain attorneys without having to pay hourly fees, this system provides critical access to the courts for people who otherwise would not be able to find competent counsel to represent them. That access is particularly important for the effective enforcement of public protection statutes, such as the wage laws at issue in this case. It is well recognized that "private suits provide a significant supplement to the limited resources available to [government enforcement agencies] for enforcing [public protection] laws and deterring violations." *Reiter v. Sonotone Corp.*, 442 U.S. 330, 344 (1979).

**4.      The proposed notice satisfies Fed. R. Civ. P. 23.**

The proposed notice fully complies with requirements of Fed. R. Civ. P. 23(c)(2)(B), which requires notices issued in a Rule 23(b)(3) class action to include the following information:

> (i) the nature of the action;

> (ii) the definition of the class certified;

> (iii) the class claims, issues, or defenses;

> (iv) that a class member may enter an appearance through an attorney if the member so desires;

> (v) that the court will exclude from the class any member who requests exclusion;

> (vi) the time and manner for requesting exclusion; and

> (vii) the binding effect of a class judgment on members under Rule 23(c)(3).

Fed. R. Civ. P. 23(c)(2)(B). Class Counsel have structured the notice to conform to these requirements, and also have included additional information to ensure that class members fully understand the background and context of the proposed settlement.

If approved, the notice will be sent by first-class mail to the last known addresses of all members of the settlement class. To the extent any mailings are returned as undeliverable, the settlement administrator will use appropriate databases to skip-trace outdated addresses, and will promptly resend the notices and claim forms to those updated addresses.

## Conclusion

For these reasons, Ms. Prinzo respectfully requests that the Court preliminarily approve the proposed class settlement, appoint the undersigned as class counsel, and approve issuance of the proposed notice, all as set forth in the proposed order attached as Ex. 3.

JUDITH PRINZO, on behalf of herself and all others similarly situated,

By Class Counsel,

/s/ Stephen Churchill
Stephen S. Churchill (BBO#564158)
FAIR WORK, P.C.
192 South Street, Suite 450
Boston, MA 02111
(617) 607-6230
steve@fairworklaw.com

Benjamin Knox Steffans (BBO# 568535)
Steffans Legal PLLC
7 North Street, Suite 307
Pittsfield, MA 01201
(413) 418-4176
bsteffans@steffanslegal.com

Dated: September 22, 2023

ASSENTED TO:

HANNAFORD BROS. CO., LLC
By its attorneys,


*/s/ Christopher M. Pardo*
Christopher M. Pardo (BBO# 674674)
 *cpardo@HuntonAK.com*
Elizabeth L. Sherwood (BBO# 687866)
 *esherwood@HuntonAK.com*
HUNTON ANDREWS KURTH LLP
60 State Street, Suite 2400
Boston, MA 02109
Tel: (617) 648-2800
Fax: (617) 433-5022

- and -

Ryan A. Glasgow (admitted *pro hac vice*)
 *rglasgow@HuntonAK.com*
HUNTON ANDREWS KURTH LLP
Riverfront Plaza, East Tower
951 East Byrd Street
Richmond, VA 23219
Tel:  (804) 788-8791
Fax:  (804) 343-4897

## CERTIFICATE OF SERVICE

This will certify that on this date I served a copy of this document, by ECF, on counsel for the Defendant.


Dated:  September 22, 2023                      /s/ Stephen Churchill
                                                Stephen Churchill

074487.0001321 DMS 303788018v3