**UNITED STATES DISTRICT COURT**
**DISTRICT OF MASSACHUSETTS**

Civil Action No. 1:21-cv-11901-WGY
Civil Action No. 1:22-cv-10672-WGY

JUDITH PRINZO, on behalf of herself )
and all other employees similarly situated, )
                                 )
       Plaintiff, )
                                   )
v. )
                                   )
HANNAFORD BROS. CO., LLC, )
                                   )
       Defendant. )

**ASSENTED-TO MOTION FOR FINAL APPROVAL OF**
**CLASS ACTION SETTLEMENT AND**
**PROPOSED ATTORNEYS' FEES AND COSTS**

**Table of Contents**

Background ...................................................................................................................3

Terms of Proposed Settlement .....................................................................................5

Results of the Claims Process ......................................................................................6

Argument .....................................................................................................................7

    1. The settlement amount is fair, reasonable, and adequate. ....................................8

    2. The proposed payment to Ms. Prinzo is fair and reasonable. .............................10

    3. The proposed attorneys' fees and costs are fair and reasonable. ........................12

Conclusion ...................................................................................................................15

Pursuant to Fed. R. Civ. P. 23 and 54, Plaintiff Judith Prinzo, on behalf of herself and all others similarly situated, and with the Defendant's assent, requests final approval of a proposed settlement that resolves the two above-captioned class action lawsuits that Plaintiff has filed against Defendant, as well as the requested award of attorneys' fees and costs. A copy of the settlement agreement is attached as Exhibit 1. A proposed order is attached as Exhibit 2.

Following the Court's preliminary approval of the settlement, Court-approved notices were sent to all members of the proposed settlement class. A copy of the notice package is attached as Exhibit 3. No class members objected to any element of the proposed settlement.

## Background

Hannaford Bros. Co., LLC ("Hannaford") owns and operates supermarkets throughout Massachusetts and surrounding states. Ms. Prinzo formerly worked as a Bakery Sales Manager at Hannaford's store in Middleboro, Massachusetts.

On April 21, 2021, Ms. Prinzo filed a Class Action Complaint in Plymouth Superior Court. The Complaint asserts three counts under Massachusetts law, alleging failure to pay overtime as required by G.L. c. 151, § 1A, failure to pay premium wages for work performed on Sundays, G.L. c. 136, § 6, and failure to pay premium wages for work on covered holidays, G.L. c. 136, § 13.  Hannaford denies the allegations contained in the Class Action Complaint and contends that Plaintiff and all of the class members were properly classified as exempt under the Massachusetts Wage Act ("MWA").

After an initial period of discovery, the case was removed to this Court. The Court granted Ms. Prinzo's initial motion to remand, but Hannaford removed the case again, and Ms. Prinzo's second motion to remand was denied.  The MWA case is currently docketed as Civil Action No. 1:21-cv-11901-WGY (the "MWA Case"). The parties proceeded to engage in

extensive discovery, including multiple rounds of written discovery, the production of well over 100,000 pages of documents, numerous depositions of Hannaford witnesses, and a full-day deposition of Ms. Prinzo.

On February 3, 2023, the Court issued an order certifying the following class: "All persons who work or have worked between January 12, 2018 and the present for Hannaford in Massachusetts as fresh department managers – including all (i) Bakery Sales Managers, (ii) Deli Sales Managers, (iii) Deli/Bakery Sales Managers, (iv) Produce Sales Managers, (v) Meat Market Managers, (vi) Meat Market/Seafood Sales Managers, and (vii) Deli/Seafood Managers – who did not receive overtime premium pay for all hours worked over 40 in a workweek, did not receive a premium for hours worked on Sunday, or did not receive a premium for hours worked on Protected Holidays." (ECF No. 47). A notice was issued to the certified class, and 6 class members timely requested exclusion from the class at that time.

Separately, on May 4, 2022, Ms. Prinzo filed a second lawsuit against Hannaford under the Fair Labor Standards Act on behalf of herself and nationwide class of current and former "fresh department managers," styled as *Judith Prinzo v. Hannaford Bros. Co., LLC,* Case No. 1:22-cv-10672-WGY (the "FLSA Case"). The FLSA Case has not been certified, and to date, only three putative class members have filed consents to join the case (Dawn Eringi, Avery Sartelle, and Amanda Tracy). Hannaford likewise denies the allegations in the FLSA Case.[1]

On July 10, 2023, following the Rule 23 class notice period, the parties engaged in a full-day, in-person mediation with Mark Irvings, a highly regarded mediator with extensive

---

[1] In fact, on June 6, 2022, Hannaford filed a Motion to Dismiss the FLSA Case (Dkt. 9). The Court initially granted that Motion on October 4, 2022 (Dkt. 20), but during a subsequent Status Conference on November 2, 2022, the Court requested that the parties file additional briefing on the Motion. Those briefs were filed (Dkt. 29, 31), and the issue remains pending before the Court.

experience in wage and hour class actions. As a result of that process, the parties ultimately agreed to the terms of a proposed settlement to resolve both the MWA Case and the FLSA Case.

### Terms of Proposed Settlement

The proposed settlement requires a non-reversionary payment by Hannaford of $1,048,000, plus the employer's share of payroll taxes for any payments characterized under the settlement as wages. For comparison purposes, and based on damages estimates prepared by Class Counsel, if members of the class worked 5 hours of overtime for 65% of weeks during the year (as alleged by Ms. Prinzo),[2] the estimated amount of unpaid overtime wages at issue in this case would be about $725,000, assuming all members of the class were non-exempt and therefore entitled to overtime.

Of the total settlement amount, the agreement proposes that one-third of the settlement amount be allocated for attorneys' fees; that Ms. Prinzo receive total payments of $75,000, which includes her share of alleged unpaid wages and a service award as incentive compensation; that $20,000 be allocated to litigation and administrative costs (including, for example, litigation costs and the costs of a third-party administrator, who will manage the notice, claims, and settlement payment process); and that $603,410 be distributed to members of the class (the "Class Fund") (which, as noted above, would constitute approximately 80% of the class members' estimated unpaid overtime wages).

The proposed settlement also resolves the FLSA Case. As noted above, no collective or class has been certified in that case, and of the three individuals (in addition to Ms. Prinzo) who

---

[2] It is expected that class members would have weeks during which they did not work overtime based on paid holidays, vacation days, sick days, or other modifications to their schedule. Ms. Prinzo, for example, claims that she had overtime hours in about 34 weeks of the year, or about 65% of the year.

opted into that case, two are already members of the Rule 23 Class in the MWA case and therefore eligible for a pro rata share of the Class Fund. With respect to the one and only opt-in plaintiff who is not a member of the Rule 23 Class in the MWA case, Amanda Tracy, the proposed agreement provides Tracy $424, an amount that likely exceeds her potential damages given that she worked in a covered position for only about five weeks, at most, during the longest possible limitations period.  Class counsel has conferred with Ms. Tracy, and she has agreed to accept this amount in settlement of her claims in the FLSA Case.

The parties have agreed that class members do not need to file a claim form to participate in the settlement. As a result, assuming that the settlement is finally approved, the Class Fund will be divided on a pro rata basis to the class members who did not exclude themselves from the settlement. Each eligible class member's share of the Class Fund will be calculated based solely on their salary and periods of eligible employment during the class period. Because there are no records of actual hours worked, the calculation will assume that all eligible members worked the same number of hours each week that they worked in a covered position.

Any checks that are not cashed within 120 days after issuance will be cancelled, and replacement checks will be submitted to the Unclaimed Property Division of the Commonwealth of Massachusetts Treasurer's Office in the name of the applicable class member.

Additional details regarding the proposed settlement are set forth in the agreement itself, which is attached as Exhibit 1.

**Results of the Claims Process**

Following the Court's preliminary approval of the settlement, class counsel hired Optime Administration, LLC, a firm that provides claims administration services for class actions. (Affidavit of Scott Simpson ("Simpson Aff."), Ex. 4, ¶ 1). On November 14, 2023, Optime

issued notice to 124 class members by first-class mail. (Id. ¶ 4). Class members were provided a

45-day period to out opt of the case if they chose to do so or to submit any objections to the

proposed settlement. (Notice Package, Ex. 3).

When mailed notices were returned as undeliverable, Optime attempted to locate updated

contact information using the best available resource, a comprehensive people-finding database

called Delvepoint. (Simpson Aff. ¶ 4). Optime successfully located a new address for three class

members, and only two were returned as undeliverable. (Id. ¶ 5). Optime received two additional

opt outs. (Id. ¶ 7). It did not receive any objections to the settlement. (Id.).

**Argument**

A class action may not be settled or compromised without the approval of the Court. Fed.

R. Civ. P. 23(e). It is well established, however, that settlements are favored. *Newberg and*

*Rubenstein on Class Actions*, §13.44 (6th ed.) ("The law favors settlement, particularly in class

actions and other complex cases where substantial resources can be conserved by avoiding

lengthy trials and appeals."). *See also E.E.O.C. v. Astra U.S.A., Inc.*, 94 F.3d 738, 744 (1st Cir.

1996) ("We do not doubt that public policy strongly favors encouraging voluntary settlement" of

class action claims.). The advantages to the parties and the courts are particularly apparent in the

compromise of class actions, which are "often complex, drawn out proceedings demanding a

large share of finite judicial resources." *Mayfield v. Barr*, 985 F.2d 1090, 1092 (D.C. Cir. 1993).

*See also Cotton v. Hinton*, 559 F.2d 1326, 1331 (5th Cir. 1977) ("In the class action context in

particular, 'there is an overriding public interest in favor of settlement,' [which] minimizes the

litigation expenses of both parties and also reduces the strain such litigation imposes upon

already scarce judicial resources").

Likewise, under the FLSA, the Court may approve a settlement of FLSA claims upon a finding that "all parties to the action have agreed to it, and that it represents a fair and reasonable resolution of a bona fide dispute over FLSA provisions." *Singleton v. AT&T Mobility, Servs., LLC*, 146 F. Supp. 3d 258, 260 (D. Mass. 2015).

**1.     The proposed settlement is fair, reasonable, and adequate.**

Before granting approval of a proposed class action settlement, the Court must find that the settlement is fair, reasonable, and adequate, guided by four factors: (1) the class representatives and class counsel have adequately represented the class, (2) the proposal was negotiated at arm's length, (3) the relief provided for the class is adequate, and (4) the proposal treats class members equitably relative to each other. Fed. R. Civ. P. 23(e)(2). All of these factors support final approval of the proposed settlement.

First, Ms. Prinzo and class counsel have adequately represented the class. This was a long and hard-fought case. Ms. Prinzo and class counsel overcame a number of obstacles on the road to achieving a proposed agreement, including two contested rounds of removal, the need to review and analyze over 100,000 pages of discovery materials, the time and expense associated with nine depositions, and extensive briefing in connection with a successful motion for class certification. As this Court previously recognized when certifying a class in this case, class counsel are experienced in employment law and class action litigation. Moreover, as class representative, Ms. Prinzo partipated actively in the litigation (attending a full-day, in-person deposition and a full-day, in-person mediation) and turned down a substantial individual settlement offer in order to keep the class proceeding going.

Second, the negotiations occurred at arms' length. The parties (including Ms. Prinzo and representatives from Hannaford) and their counsel engaged in a day-long, in-person mediation

with a professional mediator who has substantial experience with wage and hour class actions.
The parties took opposing positions with respect to liability and damages but were able to reach a
compromise.

Third, the total amount of the settlement is fair, reasonable, and adequate in the context of
this case. As noted above, class counsel estimate that the unpaid overtime wages in this case total
about $725,000 using a reasonable set of assumptions. The total settlement is more than 1.4-
times that amount. Although Ms. Prinzo believes that she and the class have a strong argument as
to liability, there remain substantial risk factors, including a risk of decertification, the risk of a
ruling at summary judgment or at trial that class members were properly classified as exempt
from overtime, the risk of an award of damages that is lower than expected, and the risk of a
lengthy and uncertain appeal process.  Indeed, Hannaford has consistently maintained that Ms.
Prinzo and all other class members were properly classified as exempt under the executive,
administrative, and combination exemptions and were, therefore, not entitled to or eligible for
any overtime compensation under the MWA or FLSA. If this matter had continued, Hannaford
was prepared to move for summary judgement on all claims and for decertification of the class.
Relative to their potential damages, the settlement guarantees significant recoveries for eligible
class members, while avoiding the delays and risks of litigation, including the risk of no recovery
at all.

Fourth, the proposed settlement treats all members of the class equitably. Each class
member's share of the class funds will be based on their estimated share of damages, given the
number of weeks that they worked during the class period and their pay rates. The settlement
assumes that all class members worked the same number of overtime hours each week. That
assumption is a reasonable one, given that fresh department managers were given similar

schedules and responsibilities, and given that there is no other equitable way to determine
overtime hours.

2.     **The proposed payment to Ms. Prinzo is fair and reasonable.**

The proposed payment to Ms. Prinzo was expressly disclosed in the class notice. (Notice
Package, Ex. 3). No members of the class objected to that payment. Indeed, class members
surely recognized that if Ms. Prinzo had not initiated and actively litigated this case, they never
would have received any payment. The proposed payment to Ms. Prinzo is intended to
compensate her for the significant effort and risk associated with her role as the named plaintiff,
as well as her execution of a broader release.

Courts have widely recognized that incentive awards serve an important function in
promoting enforcement of state and federal law by private individuals, while encouraging class
action settlements. *See In re Relafen Antitrust Litig.*, 231 F.R.D. 52, 82 (D. Mass. 2005)
("Incentive awards are recognized as serving an important function in promoting class action
settlements"), *quoting In re Lupron*, 228 F.R.D. 75, 98 (D. Mass. 2005); *In re Compact Disc
Min. Adver. Price Antitrust Litig.*, 292 F. Supp. 2d 184, 189 (D. Me. 2003) ("Because a named
plaintiff is an essential ingredient of any class action, an incentive award can be appropriate to
encourage or induce an individual to participate in the suit"). As one court recently noted,
"[s]ervice awards [i.e., incentive payments] are common in class action cases and serve to
compensate plaintiffs for the time and effort expended in assisting the prosecution of the
litigation, the risks incurred by becoming and continuing as a litigant, and any other burdens
sustained by the plaintiffs. . . It is important to compensate plaintiffs for the time they spend and
the risks they take." *Beckman*, 293 F.R.D. at 483 (citations omitted).

A critical factor in determining Ms. Prinzo's proposed payment in this case was her rejection of an unsolicited, individual settlement offer, prior to class certification, in the amount of $74,999. Ms. Prinzo's rejection of that offer ensured that the case would proceed as a class action, bringing significant benefits to members of the class who likely would have received nothing at all if she had accepted an individual settlement. Significantly, Ms. Prinzo did not use the threat of a class action to try to negotiate an even greater individual settlement; instead, she simply rejected Hannaford's offer and proceeded to seek certification on behalf of a class. When Ms. Prinzo rejected Hannaford's offer, she was taking a significant risk that she would receive nothing at all, because Hannaford might have avoided liability altogether. In addition, as part of the proposed settlement, Ms. Prinzo is executing a broad, general release, while members of the settlement class are releasing only the overtime, Sunday, and holiday pay claims alleged in the complaint.

Incentive awards serve a particularly important role in employment class actions, which have been found to warrant the highest incentive awards. 5 *Newberg and Rubenstein on Class Actions* § 17:8 (6th ed.) (citing study finding that the mean incentive award per representative in employment cases was $107,086 in 2021 dollars, compared to $2,033 in consumer credit cases, noting that "the named plaintiffs in [employment] cases are being rewarded for the risks of retaliation that they faced"), *citing* Theodore Eisenberg and Geoffrey P. Miller, *Incentive Awards to Class Action Plaintiffs: An Empirical Study*, 53 UCLA L. Rev. 1303, 1333 (2006). Indeed, named plaintiffs may risk their livelihood to bring a case forward on behalf of their fellow co-workers. Courts have recognized the important role of class actions in the employment context precisely because of this fear of potential retaliation. *See, e.g., Perez v. Safety-Kleen Systems, Inc.*, 253 F.R.D. 508, 520 (N.D. Cal. 2008) (concluding class action was superior because "some

class members may fear reprisal"); *Guzman v. VLM, Inc.*, 2008 WL 597186, at *8 (E.D.N.Y. 2008) (noting "valid concern" that "many employees will be reluctant to participate in the action due to fears of retaliation"). This same consideration makes incentive awards appropriate in employment class action settlements, as well: "[Incentive] awards are particularly appropriate in the employment context. In employment litigation, the plaintiff is often a former or current employee of the defendant, and thus, by lending his name to the litigation, he has, for the benefit of the class as a whole, undertaken the risk of adverse actions by the employer or co-workers." *Frank v. Eastman Kodak Co.*, 228 F.R.D. 174, 187 (W.D.N.Y. 2005).

The risk to Ms. Prinzo is particularly acute in the Internet age. Anyone who does a search of "Judith Prinzo" on Google will see that she was the named plaintiff in this lawsuit. As a matter of everday experience, Plaintiff believes that this type of publicity is likely to adversely affect her ability to find future employment, as most employers presumably are not keen on hiring somebody who has sued a former employer, particularly in a costly class action. This factor further demonstrates the risk that Ms. Prinzo took for the benefit of the class.

**3.     The proposed attorneys' fees and costs are fair and reasonable.**

To date, class counsel have incurred fees of at least $233,240 and costs of over $15,000 in connection with extensive discovery practice (including, among other things, nine depositions and a review of over 100,000 documents), two contested motions to remand, a motion to dismiss, a contested class certification motion, numerous depositions, and an extended settlement process. (Affidavit of Stephen Churchill, Ex. 5, ¶¶ 12-13; Affidavit of Benjamin Knox Steffans, Ex. 6, ¶ 2). Class counsel expect to spend considerably more time with the settlement approval and administration process. (Churchill Aff. ¶ 12). As a result, the proposed fee award of $349,166

represents a multiplier of less than 1.5, which is well within the range of reasonable fee awards

for class action cases.[3]

Courts frequently favor an award of fees from a common fund, as called for by the

proposed settlement in this case. As the Supreme Court has explained:

> [T]his Court has recognized consistently that a litigant or a lawyer who recovers a
> common fund for the benefit of persons other than himself or his client is entitled
> to a reasonable attorneys' fee from the fund as a whole. . . . Jurisdiction over the
> fund involved in the litigation allows a Court to prevent . . . inequity by assessing
> attorney's fees against the entire fund, thus spreading fees proportionately among
> those benefited by the suit.

*Boeing Co. v. Van Gemert*, 444 U.S. 472, 478 (1980) (citations omitted).

When awarding fees from a common fund, the "percentage of the fund" method has

substantial advantages over the lodestar method. As the First Circuit observed, the percentage

method is less burdensome to administer than the lodestar method. *In re Thirteen Appeals*, 56

F.3d 295, 307 (1st Cir. 1995). The court also endorsed the percentage method because it is result-

oriented, and therefore promotes a more efficient use of attorney time – a loadstar method may

give attorneys an incentive to spend as many hours as possible on the litigation and may

discourage early settlements. *Id.* When using the percentage method, courts routinely approve

fee awards that represent one-third of the settlement fund.[4]

---

[3] *See, e.g., In re Puerto Rican Cabotage Antitrust Litigation*, 815 F. Supp. 2d 448, 465 (D. Puerto Rico 2011) (citing decisions approving multipliers of 2.02, 3.0, 1.97, 2.697, and 3.5) (citations omitted).

[4] There are numerous examples of cases in which a one-third fee was approved. *See, e.g., Roberts v. TJX Companies, Inc.*, 2016 WL 8677312, at *13–14 (D. Mass. Sep. 30, 2016) (awarding fees of one-third of $4,750,000 common fund); *Scovil v. FedEx Ground Package System, Inc.*, 2014 WL 1057079, at *5 (D.Me. Mar. 14, 2014) (awarding fees and costs equal to one-third of $5,794,200 common fund); *In re Relafen Antitrust Litigation*, 231 F.R.D. at 82 (awarding fees equal to one-third of $75,000,000 settlement fund).

An award of 33 percent of the fund is consistent with the vital role that contingency arrangements play in making legal counsel available to employees who cannot afford hourly fees. Unlike traditional firms that receive hourly fees on a monthly basis, employment counsel who take cases on contingency often spend years litigating cases (typically while incurring significant out-of-pocket expenses for experts, transcripts, travel, etc.), without receiving any ongoing payment for their work. Sometimes fees and expenses are recovered; other times, despite hundreds of hours of work, nothing is recovered. Indeed, class counsel currently are litigating other cases on a contingency basis in which they have well over $100,000 in attorney time and have spent well over $100,000 in expert fees or other costs while facing a significant risk of recovering nothing. This type of practice is viable only if attorneys, having received nothing for their work on some cases, receive more in other cases than they would if they charged hourly fees. Courts have long recognized this reality. *See, e.g., Hensley v. Eckerhart*, 461 U.S. 424, 448 (1983) (noting that "[a]ttorneys who take cases on contingency, thus deferring payment of their fees until the case has ended and taking upon themselves the risk that they will receive no payment at all, generally receive far more in winning cases than they would if they charged an hourly rate"); *In re Union Carbide Corp. Consumer Products Business Securities Litigation*, 724 F. Supp. 160, 168 (S.D.N.Y. 1989) ("Contingent fee arrangements implicitly recognize the risk factor in litigation and that the winning cases must help pay for the losing ones if a lawyer who represents impecunious plaintiffs, or those plaintiffs not so fully committed as to put their own money where their mouth is, will remain solvent and available to serve the public interest.").  By permitting clients to obtain attorneys without having to pay hourly fees, this system provides critical access to the courts for people who otherwise would not be able to find competent counsel to represent them. That access is particularly important for the effective

enforcement of public protection statutes, such as the wage laws at issue in this case. It is well recognized that "private suits provide a significant supplement to the limited resources available to [government enforcement agencies] for enforcing [public protection] laws and deterring violations." *Reiter v. Sonotone Corp*., 442 U.S. 330, 344 (1979).

<strong>Conclusion</strong>

For these reasons, Ms. Prinzo respectfully requests that the Court grant final approval of the proposed class settlement and enter the proposed order attached as Ex. 2.

> JUDITH PRINZO, on behalf of herself and all others similarly situated,
>
> By Class Counsel,
>
> /s/ Stephen Churchill
> Stephen S. Churchill (BBO#564158)
> FAIR WORK, P.C.
> 192 South Street, Suite 450
> Boston, MA 02111
> (617) 607-6230
> steve@fairworklaw.com
>
> Benjamin Knox Steffans (BBO# 568535)
> Steffans Legal PLLC
> 7 North Street, Suite 307
> Pittsfield, MA 01201
> (413) 418-4176
> bsteffans@steffanslegal.com

Dated: January 29, 2024

15

ASSENTED TO:

HANNAFORD BROS. CO., LLC
By its attorneys,


*/s/ Christopher M. Pardo*
Christopher M. Pardo (BBO# 674674)
  *cpardo@HuntonAK.com*
Elizabeth L. Sherwood (BBO# 687866)
  *esherwood@HuntonAK.com*
HUNTON ANDREWS KURTH LLP
60 State Street, Suite 2400
Boston, MA 02109
Tel: (617) 648-2800
Fax: (617) 433-5022

- and -

Ryan A. Glasgow (admitted *pro hac vice*)
  *rglasgow@HuntonAK.com*
HUNTON ANDREWS KURTH LLP
Riverfront Plaza, East Tower
951 East Byrd Street
Richmond, VA 23219
Tel:  (804) 788-8791
Fax:  (804) 343-4897

16

## <u>CERTIFICATE OF SERVICE</u>

This will certify that on this date I served a copy of this document, by ECF, on counsel for the Defendant.


Dated:  January 29, 2024                      /s/ Stephen Churchill
                                              Stephen Churchill